UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

APPALACHIAN VOICES,
CENTER FOR BIOLOGICAL DIVERSITY,
and SIERRA CLUB,
Plaintiff,

v.                                                    No. 3:23-cv-00604

TENNESSEE VALLEY AUTHORITY,
Defendant.

## TENNESSEE VALLEY AUTHORITY'S ANSWER TO THE AMENDED COMPLAINT

Pursuant to the Federal Rules of Civil Procedure, Defendant Tennessee Valley Authority ("TVA") responds to Plaintiffs' Amended Complaint (Doc. 16) as follows. The numbered paragraphs of this Answer correspond to the numbered paragraphs of the Amended Complaint and the headings of Plaintiffs' Amended Complaint are included for organization only. In doing so, TVA does not waive any defensive theory or agree to or admit that Plaintiffs' headings are accurate, appropriate, or substantiated.

### FIRST DEFENSE

Responding to the numbered allegations of Plaintiffs' Amended Complaint, TVA states as follows:

### INTRODUCTION

1.      The allegations of paragraph 1 are denied, except TVA admits that it is the nation's largest public utility and that the Amended Complaint alleges claims arising under the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321, *et seq*. Unless expressly admitted, the allegations of paragraph 1 are denied.

2.      Answering the allegations of the first sentence of paragraph 2, TVA admits that

Case 3:23-cv-00604    Document 17    Filed 08/25/23    Page 1 of 65 PageID #: 150

the Amended Complaint challenges TVA's decision to retire and demolish the two coal-fired units at Cumberland Fossil Plant ("CUF"), unit 1 by 2026 and unit 2 by 2028, and to construct and operate a combined-cycle natural gas plant that will provide firm, dispatchable generation of 1,450 megawatts ("MWs") to replace the generation lost from the retirement of CUF unit 1, but denies the substance of those allegations. Unless expressly admitted, TVA denies the remaining allegations of paragraph 2.

3. Answering the allegations of paragraph 3, TVA admits that it published a Notice of Intent in the Federal Register on May 11, 2021, announcing its intent to prepare an environmental impact statement ("EIS") for the retirement of the two CUF fossil units and for the construction and operation of facilities to replace part of the retired generating capacity. In the Notice of Intent, TVA requested comments on other reasonable alternatives that should be assessed in the EIS. TVA admits that Plaintiffs appear to have quoted from the portion of the Notice of Intent which sets forth TVA's long-term planning evaluations in TVA's 2019 Integrated Resource Plan ("2019 IRP") with regard to TVA's coal fleet, specifically that the coal fleet's "performance challenges are projected to increase because of the coal fleet's advancing age and the difficulty of adapting the fleet's generation within the changing generation profile; and, in general, because the coal fleet is contributing to environmental, economic, and reliability risks." Unless expressly admitted, the allegations of paragraph 3 are denied.

4. Answering the allegations of paragraph 4, TVA admits that Winter Storm Elliot reinforced the importance of a diverse generating fleet that includes generation options that are both flexible, reliable, and resilient, including during extreme weather conditions; that Winter Storm Elliott was a powerful storm that impacted most of the eastern continental

United States, bringing heavy snowfall and high winds to the Midwest and Northeast and freezing rain and high winds to the South; that the December 2022 storm wreaked havoc across the nation, causing travel disruptions and power outages; that the National Weather Service referred to Winter Storm Elliott as a "once-in-a-generation storm," which brought record breaking cold temperatures and high winds to the TVA region and across the nation; that these unprecedented conditions increased energy demand beyond what TVA had forecast, resulting in the highest 24-hour electricity demand supplied in TVA history on December 23, 2022, and the highest weekend peak demand in TVA history on December 24, 2022; that the speed, intensity, scale, and duration of Winter Storm Elliott exceeded the design basis for some of TVA's power plants, resulting in 38 of TVA's 232 generating units, including CUF and some of TVA's gas-fired units, being negatively impacted, mostly due to instrumentation that froze, and the loss of approximately 20% of TVA's available energy production on December 23, 2022; that, for approximately 2 hours and 12 minutes on December 23, 2022, TVA initiated emergency procedures, directing 153 local power companies ("LPCs") to reduce demand by 5%; that, on December 24, 2022, TVA acquired market power to cover the load forecast for December 24, but early in the morning of December 24, off-system power purchases were cut off by other power systems because of emergency conditions on their own systems caused by Winter Storm Elliot; and that for approximately 5 hours and 39 minutes on December 24, 2022, TVA initiated emergency procedures, directing 153 LPCs to reduce demand by up to 10%. All remaining allegations of paragraph 4 not expressly admitted are denied.

5.      The allegations in the first and second sentences of paragraph 5 are vague and lack the context sufficient to permit a response; however, to the extent a response is required,

TVA admits that it published a Notice of Intent in the Federal Register on May 11, 2021, announcing its intent to prepare an EIS for the retirement of the two coal-fired units at CUF and for the construction and operation of facilities to replace part of the retired generating capacity. The allegations in the third, fourth, fifth, and sixth sentences purport to characterize NEPA and the Cumberland Fossil Plant Retirement Final Environmental Impact Statement ("Final EIS"), which speak for themselves and provide the best evidence of their contents. Any allegations contrary to their plain meaning, language, and context are denied. Unless expressly admitted, the allegations of paragraph 5 are denied.

6.      TVA denies the allegations of the first sentence of paragraph 6. Answering the allegations of the second sentence of paragraph 6, TVA admits that on August 11, 2021, TVA and Tennessee Gas Pipeline Company, L.L.C. ("TGP") entered into a Precedent Agreement, which is an agreement between a transporter and shipper of natural gas to enter into a future firm natural gas transportation agreement if certain conditions precedent are met and that the Precedent Agreement with TGP was contingent on the outcome of TVA's environmental review and all necessary regulatory approvals or authorizations. Unless expressly admitted, the allegations of paragraph 6 are denied.

7.      Answering the allegations of the first sentence of paragraph 7, TVA admits that the allegations purport to characterize NEPA and the regulations that implement NEPA, which speak for themselves, but TVA denies any allegation that is inconsistent with the plain language, meaning, or context of the NEPA statute and implementing regulations. The allegations of the second sentence of paragraph 7 are denied.

8.      Answering the allegations of the first and second sentences of paragraph 8, TVA admits that in December 2022 TVA issued a Final EIS that evaluates the potential

environmental effects associated with the proposed retirement and demolition of the two CUF fossil units and the addition of replacement generation for one of the retired CUF fossil units and admits that the Record of Decision ("ROD") for the Final EIS issued on January 10, 2023, and was published in the Federal Register on January 20, 2023. The allegations of the third and fourth sentences of paragraph 8 are denied. Unless expressly admitted, the allegations of paragraph 8 are denied.

9.      TVA admits that Plaintiffs have brought this action against TVA and that Plaintiffs seek the relief stated, but TVA denies that such relief is appropriate and denies that Plaintiffs are entitled to the requested relief or any other relief.

## JURISDICTION AND VENUE

10.      Answering the allegations of paragraph 10, TVA admits that 28 U.S.C. § 1331 supplies the appropriate jurisdictional basis for this action and that the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706, generally authorizes judicial review of final agency actions, including final agency actions under NEPA; however, TVA denies that Plaintiffs have established standing to bring the claims set forth in the Amended Complaint.

11.      Answering the allegations of paragraph 11, TVA admits that the APA, 5 U.S.C. §§ 501, *et seq.*, which speaks for itself, authorizes judicial review consistent with the statutory terms and specifies the scope of review, including the nature of relief to be awarded in appropriate cases, as set forth in the statute; and TVA further admits that the Declaratory Judgment Act, 28 U.S.C. § 2201, which speaks for itself, provides that any Court of the United States, in a case of actual controversy within its jurisdiction, "may declare the rights and other legal relations of any interested party seeking such declaration;" however, TVA denies that Plaintiffs have established standing to bring the claims set forth in the Amended

Complaint. To the extent that there are any remaining allegations contained within this paragraph, they are denied.

12.     Answering the allegations of paragraph 12, TVA admits that venue is proper in this district under 28 U.S.C. § 1391(b)(2). To the extent that there are any remaining allegations contained within this paragraph, they are denied.

## PLAINTIFF CONSERVATION GROUPS

### Appalachian Voices

13.     TVA is without knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 13, so those allegations are denied.

14.     TVA is without knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 14, so those allegations are denied.

15.     TVA is without knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 15, so those allegations are denied.

16.     TVA is without knowledge or information sufficient to form a belief about the truth of the allegations in the first, second, third, sixth, and seventh sentences of paragraph 16, so those allegations are denied. Answering the allegations of the fourth sentence of paragraph 16, TVA admits, upon information and belief, that Appalachian Voices files comments on NEPA environmental reviews from time to time, but denies the remaining allegations of this sentence. TVA denies the allegations of the fifth sentence of paragraph 16. Unless expressly admitted, the allegations of paragraph 16 are denied.

17.     Denied.

18.     Denied.

19.     TVA denies the allegations of the first sentence of paragraph 19. TVA is without

6

knowledge or information sufficient to form a belief about the truth of the allegations in the second and fifth sentences of paragraph 19 but states that the pipeline will not cross Ms. Miller's property, and therefore, her property will not be directly affected by the pipeline, so those allegations are denied. TVA denies the allegations in the third and fourth sentences of paragraph 19. Unless expressly admitted, the allegations in paragraph 19 are denied.

20.    The allegations in the first, second, third,  fifth, and seventh sentences of paragraph 20 are vague, and TVA lacks knowledge or information sufficient to form a belief as to the truth of the allegations therein; therefore, these allegations are denied. TVA denies the allegations in the fourth and sixth sentences of paragraph 20.

21.    TVA is without knowledge or information sufficient to form a belief about the truth of the allegations in the first and second sentences of paragraph 21 but states that Ms. Mummaw is not a landowner who will be directly affected by the pipeline, so those allegations are denied. TVA denies the allegations in the third sentence of paragraph 21, except TVA admits that Ms. Mummaw has submitted a Motion to Intervene and filed comments in the Federal Energy Regulatory Commission ("FERC") Docket No. CP22-493-000 regarding TGP's application. Unless expressly admitted, the allegations of paragraph 21 are denied.

22.    Answering the allegations in the first sentence of paragraph 22, TVA admits, upon information and belief, that Ms. Corlew owns property that will be crossed by the pipeline to be constructed by TGP. TVA is without sufficient knowledge or information to form a belief about the truth of the allegations in the remaining sentences of paragraph 22, so those allegations are denied. Unless expressly admitted, the allegations of paragraph 22 are denied.

*Center for Biological Diversity*

23.     TVA is without knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 23, so those allegations are denied.

24.     TVA is without knowledge or information sufficient to form a belief about the truth of the allegations in the first, second, and third sentences of paragraph 24, so those allegations are denied. Answering the allegations of the fourth sentence of paragraph 24, TVA admits that on June 13, 2022, Center for Biological Diversity submitted comments to TVA on the Draft EIS, which TVA considered, responded to, and included in the administrative record for the Final EIS, and that those comments contain some of the allegations listed in the fourth sentence of paragraph 24 and further states that the comments speak for themselves; however, TVA denies any allegations contrary to the plain meaning, language, and context of the comments. Except as expressly admitted, the allegations of paragraph 24 are denied.

25.     TVA is without knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 25, so those allegations are denied.

26.     Answering the allegations of paragraph 26, TVA admits that actions proposed in Alternative A are not likely to adversely affect the gray bat, Indiana bat, northern long-eared bat, rabbitsfoot, tan riffleshell, Price's potato-bean and Short's bladderpod and that, overall, impacts to these species would be minor, short-term, and/or periodic and minimized or mitigated through appropriate consultation with the relevant jurisdictional agencies, best management practices (minimization and conservation measures), and adherence to appropriate guidelines. Except as expressly admitted, the allegations of paragraph 26 are denied.

27.     Denied.

28.     Denied.

29.     TVA is without knowledge or information sufficient to form a belief about the truth of the allegations in the first sentence of paragraph 29, so those allegations are denied. TVA denies the second and third sentences of paragraph 29. TVA is without knowledge or information sufficient to form a belief about the truth of the allegations in the remaining sentences of paragraph 29, so those allegations are denied.

30.     TVA denies the allegations in the first sentence of paragraph 30. TVA is without knowledge or information sufficient to form a belief about the truth of the allegations in the remaining sentences of paragraph 30, so those allegations are denied. Except as expressly admitted, the allegations of paragraph 30 are denied.

31.     TVA denies the allegations in the first and second sentences of paragraph 31. TVA is without knowledge or information sufficient to form a belief about the truth of the allegations in the third sentence of paragraph 31, so those allegations are denied. TVA denies the allegations in the fourth sentence of paragraph 31. To the extent that there are any remaining allegations contained within this paragraph, they are denied.

### *Sierra Club*

32.     TVA is without knowledge or information sufficient to form a belief about the truth of the allegations in the first, second, and third sentences of paragraph 32, so those allegations are denied. Answering the allegations of the fourth sentence of paragraph 32, TVA admits that Sierra Club is a plaintiff in this action and that it claims to be suing on behalf of itself and its members, but TVA denies that Sierra Club and its members have established standing. Unless expressly admitted, the remaining allegations of paragraph 32 are denied.

33.     TVA is without knowledge or information sufficient to form a belief about the

truth of the allegations of paragraph 33, so those allegations are denied.

34.    Answering the allegations of the first sentence of paragraph 34, TVA admits that Sierra Club has participated in the administrative process for proposed TVA projects by submitting comments to TVA, which TVA has considered and addressed in the course of its environmental reviews. Answering the allegations of the second sentence of paragraph 34, TVA admits that representatives of the Sierra Club participated in the working group for TVA's 2019 IRP in which its representatives, among other participants, reviewed input assumptions, preliminary results, and provided feedback throughout the 2019 IRP process. TVA is without knowledge or information sufficient to form a belief about the truth of the allegations of the third sentence of paragraph 34, so those allegations are denied. Unless expressly admitted, the allegations of paragraph 34 are denied.

35.    Answering the allegations of the first sentence of paragraph 35, TVA admits that on May 19, 2023, TVA published a Notice of Intent in the Federal Register that TVA is preparing a programmatic EIS to assess the potential impacts associated with the implementation of the next IRP, slated to be completed in 2024, and that the Notice of Intent specified that the public comment period on scoping of the EIS and environmental issues that should be addressed as part of the EIS was open until July 3, 2023, but TVA is without knowledge or information sufficient to form a belief about the truth of the remaining allegations in this first sentence of paragraph 35, so those allegations are denied. TVA is without knowledge or information sufficient to form a belief about the truth of the allegations in the second sentence of paragraph 35, so those allegations are denied. Except as expressly admitted, the allegations of paragraph 35 are denied.

36.    Denied.

37.     Denied.

38.     Answering the allegations in the first sentence of paragraph 38, TVA admits, upon information and belief, that Mr. Conner owns property that will be crossed by the pipeline to be constructed by TGP. TVA is without knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 38, so those allegations are denied.

39.     TVA is without knowledge or information sufficient to form a belief about the truth of the allegations in the first, third, fourth, and sixth sentences of paragraph 39, so those allegations are denied. Answering the allegations in the second sentence of paragraph 39, TVA, upon information and belief, admits that the pipeline will cross Yellow Creek, but denies that this crossing is located on Mr. Crow's property and TVA further states that, upon information and belief, the technique used for crossing it will result in minimal, if any, impacts to the creek. TVA denies the allegations in the fifth and seventh sentences of paragraph 39. Unless expressly admitted, the allegations of paragraph 38 are denied.

*     *     *

40.     Denied.

41.     Answering the allegations of the first and second sentences of paragraph 41, TVA admits that on June 13, 2022, the Southern Environmental Law Center ("SELC"), on behalf of Appalachian Mountain Advocates, Sierra Club, Center for Biological Diversity, Appalachian Voices, Energy Alabama, and Southern Alliance for Clean Energy, submitted comments to TVA on the Draft EIS, which TVA considered, responded to, and included in the administrative record. Answering the allegations of the third sentence of paragraph 41, TVA admits that on September 14, 2022, SELC, on behalf of Sierra Club and Appalachian Voices,

asked TVA to supplement the Draft EIS and that the letter sent by Sierra Club and Appalachian Voices included the allegations listed in the third sentence of paragraph 41, and admits that it did not grant Sierra Club's and Appalachian Voices request to supplement the Draft EIS, but TVA denies that there was a basis for supplementing the EIS and thus denies the substance of this paragraph's remaining allegations. Answering the allegations of the fourth sentence of paragraph 41, TVA admits that on January 6, 2023, following publication of the Final EIS and therefore outside of the comment period for the Draft EIS, SELC, on behalf of Plaintiffs, asked TVA to supplement the Final EIS; that Plaintiffs' letter to TVA included some of the allegations listed in paragraph 41; and that TVA did not grant Plaintiffs' request to supplement the Final EIS; but TVA denies the substance of those allegations. Unless expressly admitted, the allegations of paragraph 41 are denied.

### DEFENDANT TENNESSEE VALLEY AUTHORITY

42.     TVA admits the allegations of the first and second sentences of paragraph 42 but states that the appropriate citation for the TVA Act, as amended, is 16 U.S.C. §§ 831 to 831ee. Answering the allegations of the third sentence of paragraph 42, TVA admits that the process for the appointment of members to the TVA Board of Directors is set forth in the TVA Act, 16 U.S.C. § 831a, which states that members are appointed by the President and with the advice and consent of the Senate. Unless expressly admitted, the allegations of paragraph 42 are denied.

43.     TVA denies the allegations of the first sentence of paragraph 43. TVA admits the allegations of the second, third, and fourth sentences of paragraph 43. Unless expressly admitted, the allegations of paragraph 43 are denied.

44.     TVA denies the allegations of the first sentence of paragraph 44. TVA denies

the allegations of the second sentence of paragraph 44. Answering the allegations of the third sentence of paragraph 44, TVA admits that it does not have shareholders. TVA denies the allegations of the remaining sentences of paragraph 44. Unless expressly admitted, the allegations of paragraph 44 are denied.

45.     Answering the allegations of paragraph 45, TVA admits that it is subject to NEPA; that the APA authorizes judicial review consistent with its statutory terms and specifies the scope of review, including the nature of relief to be awarded in the appropriate cases, as set forth in the statute; and that this paragraph contains quote from the TVA Act, 16 U.S.C. § 831c(b), which speaks for itself. Unless expressly admitted, the allegations of paragraph 45 are denied.

46.     TVA admits that its corporate headquarters is located in Knoxville, Tennessee. To the extent that there are any remaining allegations contained within this paragraph, they are denied.

## NATIONAL ENVIRONMENTAL POLICY ACT

47.     Answering the allegations of paragraph 47, TVA admits that they contain partial quotations from NEPA, which speaks for itself and provides the best evidence of its contents, and constitute legal conclusions to which no response is required; therefore, TVA denies any allegations contrary to the plain meaning, language, and context of the statute. Unless expressly admitted, the allegations of this paragraph are denied. Unless expressly admitted, the allegations of paragraph 47 are denied.

48.     Answering the allegations of the first sentence of paragraph 48, TVA admits that they purport to characterize NEPA and its implementing regulations, which speak for themselves and provide the best evidence of their contents, and constitute legal conclusions to which no response is required; therefore, TVA denies any allegation that is inconsistent with

the plain language, meaning, or context of the statute and regulations. Answering the allegations of the second sentence of paragraph 48, TVA admits that Plaintiffs appear to have provided a partial quote from the cited case, but states that this quote is incomplete and that the case speaks for itself. Except as expressly admitted, the allegations of paragraph 48 are denied.

49.     Answering the allegations of paragraph 49, TVA admits that they appear to paraphrase the cited statutory and regulatory provisions, which speak for themselves and provide the best evidence of their contents, and constitute legal conclusions to which no response is required; therefore, TVA denies any allegations contrary to the plain meaning, language, and context of the statutory and regulatory provisions. To the extent there are any remaining allegations contained within this paragraph, they are denied.

50.     Answering the allegations of paragraph 50, TVA admits that they appear to paraphrase the cited statutory provision, which speaks for itself and provides the best evidence of its contents, and constitute legal conclusions to which no response is required; therefore, TVA denies any allegations contrary to the plain meaning, language, and context of the statutory provision. To the extent there are any remaining allegations contained within this paragraph, they are denied.

51.     Answering the allegations of paragraph 51, TVA admits that they appear to paraphrase NEPA's implementing regulations, which speak for themselves and provide the best evidence of their contents, and constitute legal conclusions to which no response is required; therefore, TVA denies any allegations contrary to the plain meaning, language, and context of the referenced NEPA regulations. To the extent there are any remaining allegations contained within this paragraph, they are denied.

52.     Answering the allegations of paragraph 52, TVA admits that they purport to characterize NEPA's implementing regulations, which speak for themselves and provide the best evidence of their contents, and constitute legal conclusions to which no response is required; therefore, TVA denies any allegations contrary to the plain meaning, language, and context of the referenced NEPA regulations. To the extent there are any remaining allegations contained within this paragraph, they are denied.

53.     Answering the allegations of paragraph 53, TVA admits that they appear to characterize NEPA's implementing regulations, which speak for themselves and provide the best evidence of their contents, and constitute legal conclusions to which no response is required; therefore, TVA denies any allegations contrary to the plain meaning, language, and context of the referenced NEPA regulations. To the extent there are any remaining allegations contained within this paragraph, they are denied.

54.     Answering the allegations of paragraph 54, TVA admits that they appear to contain partial quotes from NEPA's implementing regulations, which speak for themselves and provide the best evidence of their contents, and constitute legal conclusions to which no response is required; therefore, TVA denies any allegations contrary to the plain meaning, language, and context of the referenced NEPA regulations. To the extent there are any remaining allegations contained within this paragraph, they are denied.

## TVA ACT

55.     Answering the allegations of paragraph 55, TVA admits that, among other things, the TVA Act authorizes TVA to "produce, distribute, and sell electric power." To the extent there are any remaining allegations contained within this paragraph, they are denied.

56.     The allegations of the first sentence of paragraph 56 are admitted. Answering

the allegations of the second and third sentences of paragraph 56, TVA admits that they contain partial quotes from the cited provisions of the TVA Act, which speak for themselves and provides the best evidence their contents, and constitute legal conclusions to which no response is required; therefore, TVA denies any allegations contrary to the plain meaning, language, and context of the referenced provisions of the TVA Act. To the extent there are any remaining allegations contained within this paragraph, they are denied.

57.     Answering the allegations of paragraph 57, TVA admits that that they contain partial quotes from 16 U.S.C. § 831m-1(b)(1), which speaks for itself and provides the best evidence of its contents, and constitute legal conclusions to which no response is required; therefore, TVA denies any allegations contrary to the plain meaning, language, and context of 16 U.S.C. § 831m-1(b)(1). To the extent there are any remaining allegations contained within this paragraph, they are denied.

58.     Answering the allegations of paragraph 58, TVA admits that they purport to characterize 16 U.S.C. § 831m-1(b)(3), 16 U.S.C. § 831m-1(b)(2)(C), and *Kentucky Coal Ass'n, Inc. v. TVA*, 804 F.3d 799, 802 (6th Cir. 2015), which speak for themselves and provide the best evidence of their contents, and constitute legal conclusions to which no response is required; therefore, any allegations contrary to the plain meaning, language, and context of the statutory provisions and/or inconsistent with the case when read in context are denied. All remaining allegations are denied.

**GLOBAL CLIMATE CRISIS AND FEDERAL RESPONSE**

59.     The allegations in paragraph 59 are vague and lack the context sufficient to permit a response and TVA lacks knowledge or information sufficient to form a belief on the truth of the allegations stated therein and the allegation are denied on that basis. TVA further

avers that as set forth in TVA's 2022 Carbon Report, *Leadership & Innovation on a Path to Net-Zero, TVA and the Energy System of the Future*, addressing climate change and its ramifications in the Tennessee Valley is an important part of TVA's environmental stewardship efforts and that the goal of TVA's adaptation and resiliency planning process is to ensure TVA continues to achieve its mission and program goals and to operate in a secure, effective, and efficient manner in a changing climate.

60. Answering the allegations in the first sentence of paragraph 60, TVA admits that, upon information and belief, some of the phenomena and weather events cited by Plaintiffs in the first sentence of paragraph 60 have been reported as potential effects of climate change, but TVA denies the remaining allegations as vague and lacking the context sufficient to permit a response. The allegations in the second sentence of paragraph 60 are vague and the source of the allegations is not identified; therefore, TVA lacks knowledge or information sufficient to form a belief as to the truth of the allegations stated therein, and the allegations are denied on that basis. Unless expressly admitted, the allegations of paragraph 60 are denied.

61. Answering the allegations of paragraph 61, TVA admits that the global climate system changes in time under the influence of its own internal dynamics and because of external forcings, such as volcanic eruptions; solar variations; orbital forcing; and human-generated, i.e., anthropogenic, forcings, such as the changing composition of the atmosphere and land-use change. Greenhouse gases ("GHG") in the atmosphere, primarily carbon dioxide ($CO_2$), nitrous oxide ($N_2O$), methane ($CH_4$), and other fluorine-containing compounds, absorb heat that is radiated from the Earth's surface. Anthropogenic increases in atmospheric concentrations of GHG are considered the main driver for warming of the Earth's atmosphere

over the industrial era by trapping more heat, resulting in what is referred to as global warming, which is considered to result in climate change. The majority of anthropogenic GHG emissions, primarily in the form of $CO_2$, result from the combustion of fossil fuels in both stationary sources (e.g., power plants, industrial facilities, boilers) and mobile sources (e.g., on road and off-road motor vehicles and construction equipment, rail, and marine transportation). Additional anthropogenic sources of GHG emissions that contribute to climate change include methane and nitrous oxide from agricultural sources; hydrofluorocarbons used in refrigerant equipment; and sulfur hexafluoride used as a gaseous dielectric medium for high-voltage circuit breakers, switchgears, and other electrical equipment. Emissions of hydrofluorocarbons and sulfur hexafluoride would be from equipment seal leaks, particularly from older equipment, as well as during manufacturing, installation, servicing, and disposal. However, relative to combustion-related GHG emissions, such leaks are minimal within the TVA system. Unless expressly admitted, the allegations of paragraph 61 are denied.

62.     Answering the allegations of the first sentence of paragraph 62, TVA admits that the largest component of natural gas, a fossil fuel, is methane. Answering the allegations of the second sentence of paragraph 62, TVA admits that carbon dioxide is a greenhouse gas. Unless expressly admitted, the allegations of paragraph 62 are denied.

63.     Answering the allegations of paragraph 63, TVA admits that methane emissions from leaks in the natural gas production and transport sectors are being addressed by the natural gas industry and that, between 1990 and 2019, there has been a 16 percent reduction in total methane emissions from natural gas systems, a period when gross natural gas withdrawals almost doubled. TVA further states that, upon information and belief, TGP is a member of ONE Future, a coalition of members across the natural gas value chain that are

focused on identifying policy and technical solutions that reduce methane emissions associated with the production, gathering, processing, transmission, storage, and distribution of natural gas. Unless expressly admitted, the allegations of paragraph 63 are denied.

64.     Because the "study" and/or sources of the allegations in the first and second sentences of paragraph 64 are not identified, TVA is without knowledge or information sufficient to form a belief about the truth of the allegations in these sentences, so those allegations are denied. TVA denies the allegations of the third sentence of paragraph 64. Unless expressly admitted, the allegations of paragraph 64 are denied.

65.     The allegations in paragraph 65 are vague and are therefore denied. TVA avers that GHG emissions from its coal, gas, and diesel generation assets have been decreasing, with a 63% reduction in total mass carbon emissions since 2005, and GHG emissions from the proposed Cumberland gas plant will also decrease, and TVA denies all remaining allegations.

66.     The allegations in paragraph 66 are vague and are therefore denied. TVA avers that GHG emissions from its coal, gas, and diesel generation assets have been decreasing, with a 63% reduction in total mass carbon emissions since 2005, and GHG emissions from the proposed Cumberland gas plant will also decrease, and TVA denies all remaining allegations.

67.     Answering the allegations of paragraph 67, TVA admits that, upon information and belief, events attributed to climate change have occurred in Tennessee; that weather is generally understood to refer to short term atmospheric conditions whereas climate is generally understood to refer to the weather of a specific region over a long period of time; that the Tennessee Valley has averaged 51 inches of rainfall during the past 130 years that records have been kept; and that rainfall measured for the past ten years has varied between around average, below average, and above average. Upon information and belief, the

allegations of the fourth and fifth sentences of paragraph 67 are admitted. Unless expressly admitted, the allegations of paragraph 67 are denied.

68.     Because the source of the allegations in paragraph 68 is unknown, TVA is without knowledge or information sufficient to form a belief as to the truth of the allegations, so they are denied. To the extent that there are any remaining allegations contained within this paragraph, they are denied.

69.     Because Plaintiffs failed to identify the referenced "scientific studies" upon which the allegations in paragraph 69 depend, TVA is without knowledge or information sufficient to form a belief as to the truth of these allegations and therefore denies the same. To the extent there are any remaining allegations contained within this paragraph, they are denied.

70.     The allegations in the first sentence of paragraph 70 are vague and are therefore denied. Because Plaintiffs failed to identify the source of the information upon which the allegations in the second and third sentences of paragraph 70 depend, TVA is without knowledge or information sufficient to form a belief as to the truth of these allegations, so they are denied. To the extent that there are any remaining allegations contained within this paragraph, they are denied.

71.     The allegations of paragraph 71 are vague, and Plaintiffs have failed to identify the source of the information upon which these allegations depend; therefore, TVA is without knowledge or information sufficient to form a belief as to the truth of these allegations, so they are denied. TVA avers that GHG emissions from its coal, gas, and diesel generation assets have been decreasing, with a 63% reduction in total mass carbon emissions since 2005, and GHG emissions from the proposed Cumberland gas plant will also decrease, and TVA

denies all remaining allegations.

72.     Answering the allegations of paragraph 72, TVA admits that this paragraph appears to include a partial quote from the Paris Agreement; however, the referenced provisions speak for themselves, and TVA denies any allegations contrary to their plain meaning, language, and context. To the extent that there are any remaining allegations contained within this paragraph, they are denied.

73.     Because Plaintiffs failed to identify the referenced Executive Orders, TVA is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 73 and, therefore, denies the same. To the extent there are any remaining allegations contained within this paragraph, they are denied.

74.     Answering the allegations of paragraph 74, TVA admits that the allegations quote from and purport to characterize Executive Order 13,990, which speaks for itself, but TVA denies any characterization of the Executive Order that is inconsistent with its plain language and further denies that Plaintiffs are authorized to predicate any of their claims in this lawsuit on Executive Order 13,990. Except as expressly admitted, the allegations of paragraph 74 are denied.

75.     Answering the allegations of paragraph 75, TVA admits that the allegations quote from and purport to characterize Executive Order 14,008, which speaks for itself, but TVA denies any characterization of the Executive Order that is inconsistent with its plain language and further denies that Plaintiffs are authorized to predicate any of their claims in this lawsuit on Executive Order 14,008. Unless expressly admitted, the allegations of paragraph 75 are denied.

76.     Answering the allegations of paragraph 76, TVA admits that the allegations

quote from and purport to characterize Executive Order 14,057, which speaks for itself, but TVA denies any characterization of the Executive Order that is inconsistent with its plain language and further denies that Plaintiffs are authorized to predicate any of their claims in this lawsuit on Executive Order 14,057. Unless expressly admitted, the allegations of paragraph 76 are denied.

77.     The allegations in the first and fourth sentences of paragraph 77 purport to characterize Executive Order 14,082, which speaks for itself and provides the best evidence of its contents, and any allegations contrary to its plain meaning, language, and context are denied. The allegations in the second sentence purport to characterize the Inflation Reduction Act of 2022 ("IRA"), which speaks for itself and provides the best evidence of its contents, and any allegations contrary to its plain meaning, language, and context are denied. The allegations in the third sentence are vague, but TVA avers that the IRA provides incentives for various forms of clean energy resources and that some of those incentives may become available to TVA in the future, and denies all remaining allegations in the sentence. Unless expressly admitted, all remaining allegations in this paragraph are denied.

78.     Denied.

79.     Because the "significant actions" referenced in the first sentence of paragraph 79 are unidentified, TVA is without sufficient information to form a belief as to the truth of those allegations, so those allegations are denied. Answering the allegations of the second sentence of paragraph 79, TVA admits that the allegations quote from and purport to characterize guidance from the Council on Environmental Quality ("CEQ"), which speaks for itself, but TVA denies any characterization that is inconsistent with the plain language of the CEQ guidance and further denies that Plaintiffs are authorized to predicate any of their claims

in this lawsuit on CEQ guidance. Unless expressly admitted, the allegations of paragraph 79 are denied.

80.     Answering the allegations of paragraph 80, TVA admits that the allegations quote from and purport to characterize guidance from the CEQ, which speaks for itself, but TVA denies any characterization that is inconsistent with the plain language of the CEQ guidance and further denies that Plaintiffs are authorized to predicate any of their claims in this lawsuit on CEO guidance. Unless expressly admitted, the allegations of paragraph 80 are denied.

81.     Answering the allegations of paragraph 81, TVA admits that the Environmental Protection Agency ("EPA") published the May 23, 2023 draft rule more than four months after TVA issued the ROD for the Final EIS and that Plaintiffs appear to have quoted portions of the draft rule and that the draft rule speaks for itself, but TVA denies that Plaintiffs are authorized to predicate any of their claims in this lawsuit on the May 23, 2023 draft rule. Except as expressly admitted, the allegations of paragraph 81 are denied.

## TVA'S CURRENT AND PLANNED GENERATION FLEET

### TVA's Resource Planning

82.     Answering the allegations of paragraph 82, TVA admits that as of September 30, 2022, TVA's total power supply by generating source is 39% nuclear, 33% natural gas, 15% coal-fired, 9% hydro, and 4% renewables. Unless expressly admitted, the allegations of paragraph 82 are denied.

83.     Answering the allegations in the first, second, and third sentences of paragraph 83, TVA admits that as of September 30, 2022, TVA's total power supply by generating source is 39% nuclear, 33% natural gas, 15% coal-fired, 9% hydro, and 4% renewables; that

as of September 30, 2022, TVA had over 500 MWs of solar capacity with approximately 2,000 MWs contracted; that TVA anticipates adding 10,000 MWs of solar by 2035; and that TVA has a 1,600 MWs pumped storage facility in operation today that helps optimize economic resource dispatch and provides reliability and resiliency during peak seasons. Answering the allegations of the fourth sentence of paragraph 83, TVA admits that, in 2020, TVA launched the first TVA-owned, grid scale, lithium-ion demonstration battery project; that, in 2022, TVA broke ground for the battery project, which will be located near Vonore, Tennessee; and that the system integration lessons from this battery project will guide future application of battery storage as part of the evolving bulk power system in the region. Unless expressly admitted, the allegations of paragraph 83 are denied.

84.     The allegations of the first and third sentences of paragraph 84 are admitted. The allegations of the second sentence of paragraph 84 are denied, except TVA admits that a combustion turbine is an electrical generating unit fueled by either natural gas or oil consisting of a turbine and generator. Except as expressly admitted, the allegations of paragraph 84 are denied.

85.     Admitted.

86.     Answering the allegations of paragraph 86, TVA admits that in June 2019, TVA issued the 2019 IRP and associated programmatic Environmental Impact Statement ("2019 IRP EIS"), which describe how TVA would meet electric power demands in its service area for the next 20 years while fulfilling its mission of providing low-cost, reliable power; environmental stewardship; and economic development. Except as expressly admitted, the allegations of paragraph 86 are denied.

87.     TVA denies the allegations of the first and second sentences of paragraph 87.

Answering the allegations of the third sentence of paragraph 87, TVA admits that the 2019 IRP selected a Target Power Supply Mix as its preferred strategy because it would result in a diverse energy portfolio and provide TVA the flexibility to make energy resource decisions as TVA integrates renewables onto its system and reduces carbon emissions, all while maintaining a reliable power supply for the TVA Service Area. Answering the allegations of the fourth sentence of paragraph 87, TVA admits that the Target Power Supply Mix contemplates the potential addition of up to 500 MWs of demand response; 2,200 MWs of energy efficiency; 4,200 MWs of wind; 5,300 MWs of storage; 8,600 MWs of combustion turbines; 9,800 MWs of combined cycle; and 14,000 MWs of solar, all by 2038. Unless expressly admitted, the allegations of paragraph 87 are denied.

88.     TVA admits the allegations of the first sentence of paragraph 88. Answering the allegations of the second sentence of paragraph 88, TVA admits that Plaintiff appears to have quoted a portion of the programmatic 2019 IRP EIS; however, the 2019 IRP EIS speaks for itself, and TVA denies any allegations contrary to the plain meaning, language, and context of the 2019 IRP EIS. Answering the allegations of the third sentence of paragraph 88, TVA admits that the 2019 IRP EIS stated that "[t]he adoption and implementation of a long-term energy resource strategy would have various short- and long-term consequences. These depend, in part, on the actual energy resource options implemented. Option-specific and/or site-specific environmental reviews will be conducted before final implementation decisions are made to use certain energy resources and will examine potential environmental consequences in more detail." Except as expressly admitted, the allegations of paragraph 88 are denied.

89.     Answering the allegations of paragraph 89, TVA admits that on August 22,

2019, TVA's Board of Directors approved the 2019 IRP and associated programmatic 2019 IRP EIS.

### TVA's Planned Gas Build-Out

90.     The allegations in paragraph 90 are vague and are therefore denied. TVA avers that it is adding simple-cycle combustion turbines and combined-cycle units to its generation fleet consistent with the Target Power Supply Mix adopted in its 2019 IRP.

91.     Denied.

92.     Answering the allegations of paragraph 92 which flow from the allegations of paragraph 91 (which TVA denied), TVA denies that, since February 2021, it has proposed 5,900 MWs of new gas generation across its fleet to replace aging fossil units or to add capacity.

93.     TVA denies the allegations of the first sentence of paragraph 93. Answering the allegations of the second sentence of paragraph 93, TVA admits that, in February 2021, TVA published a Draft Environmental Assessment to evaluate the proposed construction and operation of combustion turbine plants at TVA's Paradise and Colbert reservations to replace the capacity lost due to the proposed retirement of combustion turbine units at Allen and Johnsonville; and that, in January 2022, TVA published a Draft Environmental Assessment to evaluate the proposed construction and operation of aeroderivative combustion turbine units at TVA's Johnsonville Reservation to improve the ability of the TVA system to integrate variable renewable resources such as solar and wind. Answering the allegations of the third sentence of paragraph 93, TVA admits that, in May 2021, TVA published a Notice of Intent to prepare an EIS to assess the potential impacts associated with the proposed retirement of the two coal-fired units at TVA's Cumberland Fossil Plant and the construction and operation of

facilities, including combustion turbine units, and solar and storage facilities, to replace part of that retired generation; and that, in June 2021, TVA published a Notice of Intent to prepare an EIS to assess the potential impacts associated with the proposed retirement of the nine coal-fired units at TVA's Kingston Fossil Plant and the construction and operation of facilities, including combustion turbine units, local and regional transmission investments, and solar and storage facilities, to replace the retired generation. Unless expressly admitted, the allegations of paragraph 93 are denied.

94.     Answering the allegations of paragraph 94, TVA admits that Plaintiffs have quoted a portion of TVA's Form 10-K for 2021 with a notable omission and admits that the entire sentence provides as follows: "In addition, on November 10, 2021, the TVA Board authorized the CEO to evaluate, decide upon, and complete, if necessary, the retirements of Cumberland and Kingston plants and replacement generation projects, subject to complying with all required environmental reviews, periodically updating the TVA Board on plans and actions, and notifying the TVA Board before making final decisions." Unless expressly admitted, the allegations of paragraph 94 are denied.

95.     Answering the allegations of paragraph 95, TVA admits that on May 19, 2023, it published a Notice of Intent in the Federal Register announcing its intent to prepare an EIS to address potential environmental impacts associated with the proposed construction and operation of a simple cycle combustion turbine plant and battery storage energy system on a parcel of TVA-owned land in Cheatham County, Tennessee, that would generate approximately 900 MWs and would replace generation for a portion of the CUF second unit retirement planned by the end of 2028. Unless expressly admitted, the allegations of paragraph 95 are denied.

96.     TVA admits the allegations of the first sentence of paragraph 96. The allegations in the second sentence purport to characterize the Kingston Fossil Plant Retirement Draft EIS, which speaks for itself and provides the best evidence of its contents, and any allegations contrary to its plain meaning, language, and context are denied. Unless expressly admitted, the allegations of paragraph 96 are denied.

97.     The allegations in the first sentence of paragraph 97 are vague and are therefore denied. TVA denies the allegations in the second and third sentences of paragraph 97.

98.     The allegations in the first sentence of paragraph 98 are vague and lack context sufficient to permit a response and, therefore, are denied on those bases. TVA avers that, as a result of underlying supply and demand characteristics of the market, prices for all energy sources, including natural gas prices, generally fluctuate more than the prices of other commodities due to many consumers' inability to substitute other fuels when prices fluctuate. TVA admits the allegations in the second sentence that it reported at the August 31, 2022 TVA Board meeting that, as natural gas becomes a larger portion of the portfolio, the volatility price fluctuations of natural gas prices becomes a greater risk, but avers that TVA also stated that it effectively manages natural gas price exposure through various hedging strategies. TVA admits that it passes costs to its consumers, but TVA denies the remaining allegations in the third sentence. TVA avers that its generation portfolio allows it greater flexibility to substitute other fuels for generation as a mechanism to reduce its generation costs and pass those savings on to its customers. Unless expressly admitted, the remaining allegations of paragraph 98 are denied.

99.     TVA denies the allegations of the first sentence of paragraph 99. Answering the allegations of the second sentence of paragraph 99, TVA admits that with the

implementation of the recommendations in the 2019 IRP, as well as TVA's Strategic Intent and Guiding Principles, TVA stated in its 2022 Carbon Report, *Leadership & Innovation on a Path to Net-Zero, TVA and the Energy System of the Future*, that TVA has a plan to achieve a 70% reduction in carbon emissions by 2030, a path to achieve approximately 80% reduction by 2035, and aspires to achieve net zero carbon emissions by 2050. Unless expressly admitted, the allegations of paragraph 99 are denied.

## TVA'S NEPA REVIEW AND PRECOMMITMENT TO THE CUMBERLAND GAS PLANT

### The Precedent Agreement

100.   TVA admits that on August 11, 2021, TVA and TGP entered into a Precedent Agreement, which is an agreement between a transporter and shipper of natural gas to enter into a future firm natural gas transportation agreement if certain conditions precedent are met and that the Precedent Agreement with TGP was contingent on the outcome of TVA's environmental review and all necessary regulatory approvals or authorizations.   Unless expressly admitted, the allegations of paragraph 100 are denied.

101.   Denied.

102.   The allegations of paragraph 102 are denied, except that TVA admits that Section 7 of the Precedent Agreement entitled "Termination Rights" provides TVA with multiple options to terminate the Precedent Agreement. Unless expressly admitted, the allegations of paragraph 102 are denied.

103.   Answering the allegations of paragraph 103, TVA admits that Section 9 of the Precedent Agreement sets forth the cost sharing terms and responsibilities of the parties. Unless expressly admitted, the allegations of paragraph 103 are denied.

104.   Denied, except TVA admits that this paragraph contains a quoted excerpt from

Section 8 of the Precedent Agreement, which speaks for itself. To the extent there are remaining allegations in paragraph 104, they are denied.

105.     Answering the allegations in the first sentence of paragraph 105, TVA admits that TGP has initiated the FERC approval process for the pipeline, but TVA denies the remaining allegations in this sentence. Answering the allegations in the second sentence of paragraph 105, TVA admits that this paragraph contains a partial quote from a draft resource report submitted by TGP to FERC, but states that the Precedent Agreement speaks for itself and, further, that the Precedent Agreement is an agreement contingent upon the satisfaction of certain conditions precedent. Unless expressly admitted, the allegations of paragraph 105 are denied.

106.     Answering the allegations in paragraph 106, TVA admits that it filed a motion for leave to answer protests filed by environmental groups (including Plaintiffs Appalachian Voices and Sierra Club) that were rife with incorrect statements, assertions, and arguments about aspects of the Cumberland project that are solely within TVA's purview and were therefore outside the jurisdictional scope of the FERC proceeding. Unless expressly admitted, the allegations of paragraph 106 are denied.

**TVA's Draft Environmental Impact Statement**

107.     Answering the allegations of paragraph 107, TVA admits that the Draft EIS was released for public comment on April 25, 2022; that the 45-day public comment period began on April 29, 2022, and ended on June 13, 2022; and that the Final EIS was released on December 2, 2022. Unless expressly admitted, the allegations of paragraph 107 are denied.

108.     Answering the allegations of paragraph 108, TVA admits that it prepared the Final EIS in compliance with NEPA and that the Final EIS considered a No Action

Alternative and three Action Alternatives: construction and operation of a combined cycle combustion turbine natural gas-fueled plant on the CUF Reservation and a related gas pipeline ("Alternative A"); construction and operation of two simple cycle combustion turbine natural gas-fueled plants at alternate locations ("Alternative B"); and construction and operation of multiple solar generation and energy storage facilities, at alternate locations primarily in Middle Tennessee ("Alternative C"). Unless expressly admitted, the allegations of paragraph 108 are denied.

109.    TVA admits the allegations of paragraph 109 but states that under the No Action Alternative considered in the Final EIS, the two coal-fired units at Cumberland would not be retired. To the extent that there are any remaining allegations in this paragraph, they are denied.

110.    Answering the allegations of paragraph 110, TVA admits that SELC, on behalf of Plaintiffs and other groups, submitted comments to TVA on the Draft EIS, which TVA considered, responded to, and included in the administrative record for the Final EIS. Unless expressly admitted, the allegations of paragraph 110 are denied.

111.    TVA admits that EPA submitted comments to TVA on June 30, 2022, on the Draft EIS, but TVA denies the remaining allegations in the first sentence of paragraph 111. The allegations in the second, third, fourth, and fifth sentences purport to characterize EPA's comments, which speak for themselves and provide the best evidence of their contents, and any allegations contrary to their plain meaning, language, and context are denied. TVA admits that EPA requested to become a cooperating agency and that TVA agreed on July 27, 2022, to EPA's participation as a cooperating agency on the issues for those environmental impacts of the Cumberland proposal for which the EPA had special expertise, but TVA denies the

remaining allegations in the sixth sentence. Unless expressly admitted, the allegations of paragraph 111 are denied.

### TVA's Final Environmental Impact Statement

112. Admitted.

113. TVA denies the allegations in the first sentence of paragraph 113. Answering the allegations in the second and third sentences of paragraph 113, TVA admits that they identify certain portions of the Paris Agreement and Executive Order 14,008, but TVA denies any characterization of the Paris Agreement or the Executive Order that is inconsistent with their plain language and further denies that Plaintiffs are authorized to predicate any of their claims in this lawsuit on the Paris Agreement or Executive Order 14,008. TVA admits the allegations in the fourth sentence of paragraph 113. TVA denies the allegations in the fifth sentence of paragraph 113. Unless expressly admitted, the allegations of paragraph 113 are denied.

114. TVA denies the allegations in the first sentence of paragraph 114. Answering the allegations of the second sentence of paragraph 114, TVA admits, upon information and belief, that the natural gas supply chain does experience some methane leaks. Because the source of the allegations in the third sentence of paragraph 114 is unknown, TVA is without knowledge or information sufficient to form a belief about the truth of the allegations, so those allegations are denied. Except as expressly admitted, the allegations of paragraph 114 are denied.

115. Answering the allegations in the first sentence of paragraph 115, TVA admits that it utilized, after reviewing several studies, the EPA's methane leakage rate of 1.4% in the Final EIS but avers that, to the extent this sentence seeks to characterize the Final EIS, this

document speaks for itself and provides the best evidence of its content, and any allegations contrary to its plain meaning, language, and context are denied. The allegations in the second sentence purport to characterize comments submitted by EPA on the Draft EIS, which speak for themselves and provide the best evidence of their contents, and any allegations contrary to their plain meaning, language and context are denied. The allegations in the third sentence are vague and purport to characterize "peer-reviewed studies" purportedly submitted by "Conservation Groups," which speak for themselves and provide the best evidence of their contents, and any allegations contrary to their plain meaning, language, and context are denied. The allegations in the fourth sentence are denied. Unless expressly admitted, the allegations of paragraph 115 are denied.

116. TVA denies the allegations in the first sentence of paragraph 116. Answering the remaining allegations in paragraph 116, TVA admits that Plaintiffs and others that oppose replacing coal generation at Cumberland with gas generation submitted comments and materials that align with their preferred substantive outcome. Unless expressly admitted, the allegations of paragraph 116 are denied.

117. The allegations in the first sentence of paragraph 117 purport to characterize the Final EIS, which speaks for itself and provides the best evidence of its contents, and any allegations contrary to its plain meaning, language, and context are denied. The allegations in the second sentence are vague and are therefore denied. In further response to the allegations in paragraph 117, TVA admits that it used the 100-year global warming potential ("GWP") values, which are used by EPA and the United Nations Framework Convention on Climate Change. Unless expressly admitted, the allegations of paragraph 117 are denied.

118. TVA denies the allegations in the first and third sentences of paragraph 118.

Answering the allegations in the second and fourth sentences of paragraph 118, TVA admits that they contain partial quotes from the Final EIS; that FERC is the lead agency for the NEPA review of the TGP pipeline project; and that FERC evaluated the potential environmental impacts associated with the pipeline in FERC's Final EIS issued on June 30, 2023; however, TVA denies the allegations of these sentences to the extent they attempt to characterize the referenced portions of TVA's Final EIS and further states that TVA's Final EIS speaks for itself. Unless expressly admitted, the allegations of paragraph 118 are denied.

119. Answering the allegations in the first sentence of paragraph 119, TVA admits that Plaintiffs and others objected to various aspects of TVA's analysis in the Draft EIS, objections that TVA considered and addressed in preparing its Final EIS, but TVA denies that those objections have any basis in law or fact. Answering the allegations of the second and third sentences of paragraph 119, TVA admits that it independently reviewed and evaluated the TGP resource reports before incorporating them by reference into the Final EIS, pursuant to 40 C.F.R. § 1501.12; that FERC is the lead agency for the NEPA review of the TGP pipeline project; and that FERC evaluated the potential environmental impacts associated with the pipeline in FERC's Final EIS issued on June 30, 2023. Except as expressly admitted, TVA denies the allegations of paragraph 119.

120. The allegations in paragraph 120 purport to characterize the Cumberland Final EIS, which speaks for itself and provides the best evidence of its contents, and any allegations contrary to its plain meaning, language, and context are denied. TVA further denies that the reports referred to by Plaintiffs in the fourth sentence of paragraph 120 qualify as "expert reports" under Fed. R. Civ. P. 26(a)(2) and the Federal Rules of Evidence. To the extent there are any further allegations in this paragraph, they are denied.

121.     TVA denies the allegations in the first, second, and third sentences of paragraph 121. Answering the allegations in the fourth sentence of paragraph 121, TVA admits that commenters suggested that TVA adopt various sorts of "blended" alternatives for consideration, but denies that these suggested alternatives met the purpose and need of this project. TVA denies the allegations in the fifth sentence of paragraph 121. Unless expressly admitted, the allegations of paragraph 121 are denied.

122.     Answering the allegations in paragraph 122, TVA admits that Plaintiffs submitted the identified reports, which TVA considered, responded to, and included in the administrative record for the Final EIS, but denies that these reports "demonstrate" what Plaintiffs claim.

123.     Denied.

124.     Denied.

125.     TVA denies the allegations in the first sentence of paragraph 125. Answering the allegations in the second sentence of paragraph 125, TVA admits that carbon capture and sequestration systems ("CSS") and use of hydrogen as a fuel source were included in a section entitled "Alternative Fuels and Carbon Capture and Sequestration Considered but Eliminated from Further Discussion" and admits that they were not carried forward for further discussion within the Final EIS because of "current cost and maturity challenges," which rendered both CSS and use of hydrogen fuel "not considered viable within the time frame proposed for the first unit retirement at CUF." Unless expressly admitted, the allegations of paragraph 125 are denied.

126.     Answering the allegations of the first sentence of paragraph 126, TVA admits that Plaintiffs have included a partial quotation from EPA's comments on the Draft EIS,

which TVA considered, responded to, and included in the administrative record for the Final EIS; however, TVA denies that the referenced portion of the comments contain an "express[] request[]" from EPA. Answering the allegations of the second sentence of paragraph 126, TVA denies that Plaintiffs have accurately characterized the list of projects EPA listed "[f]or illustration." Answering the allegations of the third sentence of paragraph 126, TVA admits that Plaintiffs have quoted one sentence from EPA's comments, which TVA considered, responded to, and included in the administrative record for the Final EIS; however, these comments, as well as TVA's responses to them, speak for themselves, and TVA denies any allegations contrary to the plain meaning, language, and context of the comments or TVA's responses. Answering the allegations in the fourth sentence of paragraph 126, TVA admits that EPA published the *draft* rule more than five months after TVA released the Final EIS, but TVA denies that Plaintiffs are authorized to predicate any of their claims in this lawsuit on the May 23, 2023 draft rule. To the extent there are any further allegations in this paragraph, they are denied.

127. TVA denies the allegations in the first sentence of paragraph 127. Answering the allegations in the second and third sentences of paragraph 127, TVA admits that Plaintiffs have included a partial quote from a section of the Final EIS entitled "Alternative Fuels and Carbon Capture and Sequestration Considered but Eliminated from Further Discussion"; however, the Final EIS speaks for itself, and TVA denies any allegations contrary to the plain meaning, language, and context of the Final EIS. Unless expressly admitted, the allegations of paragraph 127 are denied.

128. Answering the allegations of paragraph 128, TVA admits that Plaintiffs have included a partial quote from Appendix B in the Final EIS; however, the Final EIS speaks for

itself, and TVA denies any allegations contrary to the plain meaning, language, and context of the Final EIS. Unless expressly admitted, the allegations of paragraph 128 are denied.

129.    TVA denies the allegations in the first sentence of paragraph 129. Answering the allegations in the second sentence of paragraph 129, TVA admits that the allegations quote from and purport to characterize Executive Order 13,990, which speaks for itself, but TVA denies any characterization of the Executive Order that is inconsistent with its plain language and further denies that Plaintiffs are authorized to predicate any of their claims in this lawsuit on Executive Order 13,990. Except as expressly admitted, the allegations of paragraph 129 are denied.

130.    TVA denies the allegations in the first sentence of paragraph 130. Answering the allegations in the second sentence of paragraph 130, TVA admits that Appendix B of the Final EIS analyzed the relevant assumptions and risks for the total system costs comparison of the alternatives. Unless expressly admitted, the allegations of paragraph 130 are denied.

131.    TVA denies the allegations in the first sentence of paragraph 131. Answering the allegations in the second and third sentences of paragraph 131, TVA admits that Plaintiffs submitted a report prepared by Michael Goggin, which TVA considered, responded to, and included in the administrative record for the Final EIS, that came to the conclusions outlined, but denies that Plaintiffs' characterization of this report is correct and further denies that the report's analysis and conclusions are correct. Unless expressly admitted, the allegations of paragraph 131 are denied.

132.    TVA denies the allegations in the first sentence of paragraph 132. Answering the allegations in the second, third, fourth, and fifth sentences of paragraph 132, TVA admits that Plaintiffs submitted comments on the described topics, which TVA considered, responded

to, and included in the administrative record for the Final EIS. TVA denies the allegations in the sixth sentence of paragraph 132. Unless expressly admitted, the allegations of paragraph 132 are denied.

133.    Answering the allegations in the first sentence of paragraph 133, TVA admits that Congress passed the IRA between the issuance of the Draft EIS and the completion of the Final EIS, but TVA denies the remaining allegations. TVA admits the allegations in the second sentence of paragraph 133. Answering the allegations in the third and fourth sentences of paragraph 133, TVA admits that Plaintiffs and other commenters contended that the IRA should factor into the EIS's cost assumptions, but TVA denies that those contentions are correct. Answering further, TVA avers that the IRA benefits may become available in the future. Unless expressly admitted, the allegations of paragraph 133 are denied.

134.    TVA denies the allegations in the first sentence of paragraph 134. Answering the remaining allegations in paragraph 134, TVA admits that EPA made a late request to become a cooperating agency on the Cumberland EIS and that TVA agreed to EPA's participation as a cooperating agency on the matters for which it has special expertise. Unless expressly admitted, the allegations in paragraph 134 are denied.

135.    The allegations in paragraph 135 purport to characterize a January 6, 2023 letter from EPA to TVA, which speaks for itself and provides the best evidence of its contents, and any allegations contrary to its plain meaning, language, and context are denied. Answering further, TVA avers that the cited comments were submitted outside of the comment period for the Final EIS and did not raise new issues of relevance that were not addressed by TVA in the Final EIS, Appendix O of the Final EIS, or the ROD. Unless expressly admitted, the allegations in paragraph 135 are denied.

**TVA's Response to December 2022 Blackouts**

136.    Answering the allegations of paragraph 136, TVA admits that, according to TVA's *After Action Report: Winter Storm Elliot* (2023), Winter Storm Elliott was a powerful storm that impacted most of the eastern continental United States, bringing heavy snowfall and high winds to the Midwest and Northeast and freezing rain and high winds to the South; that the December 2022 storm wreaked havoc across the nation, causing travel disruptions and power outages; that the National Weather Service referred to Winter Storm Elliott as a "once-in-a-generation storm," which brought record breaking cold temperatures, precipitation, and high winds to the TVA region and across the eastern half of the nation; that these unprecedented conditions increased energy demand beyond what TVA had forecast, resulting in the highest 24-hour electricity demand supplied in TVA history on December 23, 2022, and the highest weekend peak demand in TVA history on December 24, 2022; that the speed, intensity, scale, and duration of Winter Storm Elliott exceeded the design basis for some of TVA's power plants, resulting in 38 of TVA's 232 generating units, including Cumberland Fossil Plant and some of TVA's gas-fired units, being negatively impacted, mostly due to frozen instrumentation, and the loss of approximately 20% of TVA's available energy production on December 23, 2022; that, for approximately 2 hours and 12 minutes on December 23, 2022, TVA initiated the step of its emergency procedures that directs 153 LPCs to reduce demand by 5%; that, on December 24, 2022, TVA made arrangements for additional market purchases to cover the load forecast for December 24, but early in the morning of December 24, those power purchases were curtailed because of emergency conditions on those systems caused by Winter Storm Elliot; and that for approximately 5 hours and 39 minutes on December 24, 2022, TVA initiated the step of its emergency procedures that

directs 153 LPCs to reduce demand by up to 10%. All remaining allegations of paragraph 136 not expressly admitted are denied.

137.    TVA denies the allegations of the first sentence of paragraph 137. Answering the allegations of the second sentence of paragraph 137, TVA admits that, for approximately 2 hours and 12 minutes on December 23, 2022, TVA initiated the step of its emergency procedures that directs 153 LPCs to reduce demand by 5%; that, on December 24, 2022, TVA made arrangements for additional market purchases to cover the load forecast for December 24, but early in the morning of December 24, those power purchases were curtailed because of emergency conditions on those systems caused by Winter Storm Elliot; and that for approximately 5 hours and 39 minutes on December 24, 2022, TVA initiated the step of its emergency procedures that directs 153 LPCs to reduce demand by up to 10%. All remaining allegations of paragraph 137 not expressly admitted are denied.

138.    TVA admits that Sierra Club and others requested that TVA supplement the Final EIS, but denies that there was any basis to do so. Unless expressly admitted, the allegations of paragraph 138 are denied.

139.    TVA denies the allegations of paragraph 139.

140.    Answering the allegations of paragraph 140, TVA admits that, although solar facilities supplied power to the TVA system for limited time periods on December 23 and 24, 2022, U.S. Energy Information Administration data shows that no solar facilities were providing power to the TVA system on December 23, 2022, at 7:00 p.m. Central Time when the TVA system experienced its highest winter peak demand (third-highest peak demand in TVA history) and that no solar facilities were providing power to the TVA system on December 24, 2022, at 1:00 a.m. Central Time when the TVA system experienced the highest

winter peak demand in TVA history:



**Tennessee Valley Authority (TVA) electricity generation by energy source 12/22/2022 – 12/25/2022, Central Time**

megawatthours

Data source: U.S. Energy Information Administration

All remaining allegations of paragraph 140 not expressly admitted are denied.

141.     Answering the allegations of the first sentence of paragraph 141, TVA states that, upon information and belief, wind generation in certain parts of the country generally performed better and generally had fewer reliability problems during Winter Storm Elliot in 2022 than during Winter Storm Uri in 2021; however, because "region" is undefined, the veracity of the allegations in the first sentence of paragraph 141 cannot be ascertained and, therefore, TVA it is without knowledge or information sufficient to form a belief as to the truth of said allegations. The allegations of the second sentence of paragraph 141 are denied. Answering the allegations in the third sentence of paragraph 141, TVA denies that Southwest Power Pool is a "neighboring energy market" to the TVA system and states that, upon information and belief, Midcontinent Independent System Operator does not report the amount of wind curtailed in its footprint; TVA is without knowledge or information sufficient

Case 3:23-cv-00604     Document 17     Filed 08/25/23     Page 41 of 65 PageID #: 190

to form a belief as to the truth of the remaining allegations in the third sentence of paragraph 141 and therefore denies the same. Answering the allegations of the fourth sentence of paragraph 141, TVA admits that, upon information and belief, Southwest Power Pool curtailed various amounts of wind generation on December 23, 2022, due to transmission constraints. All remaining allegations of Paragraph 141 not expressly admitted are denied.

142. Answering the allegations of paragraph 142, TVA admits that, at the February 16, 2023 TVA Board meeting, TVA's Chief Executive Officer ("CEO"), Jeff Lyash, discussed TVA's efforts to ensure a secure energy future for the TVA region and the criticality of having a diverse set of energy sources to achieve that future, and in the course of that discussion, Mr. Lyash highlighted the importance of complementing TVA's significant investments in infrastructure and generation with energy efficiency initiatives and new efforts in demand response, including the addition over the next year of 1,000 MWs of demand response to TVA's existing 1,800 MWs of demand response. All remaining allegations of paragraph 142 not expressly admitted are denied.

**The Record of Decision**

143. Answering the allegations of paragraph 143, TVA admits that they purport to characterize various provisions of the TVA Act, which speak for themselves and provide the best evidence of their contents, and constitute legal conclusions to which no response is required; therefore, TVA denies any allegations contrary to the plain meaning, language, and context of the referenced provisions of the TVA Act. To the extent there are any remaining allegations in this paragraph, they are denied.

144. Answering the allegations of paragraph 144, TVA admits that on November 10, 2021, the TVA Board adopted a resolution titled *Plant Retirement and Generation*

*Alternatives Delegation*, which concluded that it was in the best interest of TVA to delegate authority to the CEO "to approve Project Development Actions for [the Cumberland and Kingston Fossil Plants] in order to preserve the option of having replacement generation facilities in place by any retirement dates selected by the CEO, provided that any such Project Development Actions taken prior to completion of the NEPA process for each Plant do not irreversibly and irretrievably commit TVA to a particular course of action prior to a final decision by the CEO; . . . to make the Final Decision, along with the authority to implement the Final Decision, including the authority to approve any capital projects, retirement and new construction schedules, and contractual commitments, including securing any necessary firm gas transportation rights, related to the Final Decision (the "Final Decision Actions") . . . subject to the limitations described [in the resolution] and in the [memo] and all of which are subject to the requirement that the CEO periodically report to the Board on any actions taken in accordance with the delegations granted in this Resolution and that the CEO inform the Board prior to making the Final Decision." Unless expressly admitted, the remaining allegations of paragraph 144 are denied.

145. Answering the allegations in the first sentence of paragraph 145, TVA admits that the ROD was signed on January 10, 2023, and that the ROD was published in the Federal Register on January 20, 2023; however, this sentence purports to characterize the contents of the ROD, which speaks for itself and provides the best evidence of its contents, and TVA denies any allegation that is inconsistent with the ROD. The allegations in the second sentence of paragraph 145 are denied. Unless expressly admitted, the allegations of paragraph 145 are denied.

146. Answering the allegations of paragraph 146, TVA admits that Trey Bussey of

SELC sent a request under the Freedom of Information Act ("FOIA") to TVA on March 15, 2023, and that the paragraph contains what appears to be a quotation from that FOIA request, but TVA denies that the March 15, 2023 FOIA request identifies any of the Plaintiffs as a requestor.

147.    Answering the allegations of paragraph 147, TVA admits that Plaintiffs are quoting from TVA's FOIA officer's April 11, 2023 response to SELC's March 15, 2023 FOIA request, which speaks for itself.

## CLAIMS FOR RELIEF

### Claim One – Failure to Issue a Record of Decision Before Committing to Alternative A, the Cumberland Gas Plant

148.    All responses stated above are incorporated herein by reference.

149.    Answering the allegations of paragraph 149, TVA admits that they appear to quote from NEPA's implementing regulations, which speak for themselves and provide the best evidence of their contents, and constitute legal conclusions to which no response is required; therefore, TVA denies any allegations contrary to the plain meaning, language, and context of the referenced NEPA regulations. Unless expressly admitted, the allegations of this paragraph are denied.

150.    Answering the allegations of paragraph 150, TVA admits that they purport to characterize NEPA's implementing regulations, which speak for themselves and provide the best evidence of their contents, and constitute legal conclusions to which no response is required; therefore, TVA denies any allegations contrary to the plain meaning, language, and context of the referenced NEPA regulations. Unless expressly admitted, the allegations of this paragraph are denied.

151.    Answering the allegations of paragraph 151, TVA admits that on August 11,

2021, TVA and TGP entered into a Precedent Agreement, which is an agreement between a transporter and shipper of natural gas to enter into a future firm natural gas transportation agreement if certain conditions precedent are met and that the Precedent Agreement with TGP was contingent on the outcome of TVA's environmental review and all necessary regulatory approvals or authorizations. TVA denies the allegations to the extent they purport to characterize the Precedent Agreement, and TVA states that the Precedent Agreement speaks for itself and is the best evidence of its contents. Unless expressly admitted, the allegations of paragraph 151 are denied.

152.    The allegations of paragraph 152 are denied, except TVA admits that it entered into a Precedent Agreement with TGP and that the Precedent Agreement speaks for itself and is the best evidence of its contents. Unless expressly admitted, the allegations of paragraph 152 are denied.

153.    Answering the allegations of paragraph 153, TVA admits that on August 11, 2021, TVA and TGP entered into a Precedent Agreement, which is an agreement between a transporter and shipper of natural gas to enter into a future firm natural gas transportation agreement if certain conditions precedent are met and that the Precedent Agreement with TGP was contingent on the outcome of TVA's environmental review and all necessary regulatory approvals or authorizations. TVA denies the allegations to the extent they purport to characterize the Precedent Agreement, and TVA states that the Precedent Agreement speaks for itself and is the best evidence of its contents. Unless expressly admitted, the allegations of paragraph 153 are denied.

154.    The allegations of paragraph 154 are denied, except that TVA admits that Section 7 of the Precedent Agreement entitled "Termination Rights" provides TVA with

multiple options to terminate the Precedent Agreement. Unless expressly admitted, the allegations of paragraph 154 are denied.

155. Answering the allegations of paragraph 155, TVA admits that Section 9 of the Precedent Agreement sets forth the cost sharing terms and responsibilities of the parties. Unless expressly admitted, the allegations of paragraph 155 are denied.

156. Answering the allegations in the first sentence of paragraph 156, TVA admits that, under the Precedent Agreement, TGP agreed to use commercially reasonable efforts to submit an application for and to obtain FERC Authorization and Other Governmental Authorizations as set forth in the Precedent Agreement. The allegations of the second sentence of paragraph 156 are admitted. Unless expressly admitted, the allegations of paragraph 156 are denied.

157. Answering the allegations of paragraph 157, TVA admits that Plaintiffs have set forth partial quotes from TGP's FERC application; that the Precedent Agreement speaks for itself; and that the Precedent Agreement, by its nature, is an agreement contingent upon the satisfaction of certain conditions precedent; however, TVA denies the allegations to the extent they purport to characterize either TGP's FERC's application, which is the best evidence of its contents and speaks for itself, or the Precedent Agreement, which is "subject to the completion of TVA's environmental reviews and final executive approval." Except as expressly admitted, the allegations of paragraph 157 are denied.

158. Admitted.

159. Admitted.

160. Denied.

161. Denied.

46

162.    Denied.

163.    Denied.

164.    Denied.

**Claim Two – Failure to Take a Hard Look at the Climate Consequences of the Cumberland Gas Plant**

165.    All responses stated above are incorporated herein by reference.

166.    Admitted.

167.    Answering the allegations of paragraph 167, TVA admits that they purport to characterize NEPA's implementing regulations, which speak for themselves and provide the best evidence of their contents, and constitute legal conclusions to which no response is required; therefore, TVA denies any allegations contrary to the plain meaning, language, and context of the referenced NEPA regulations. Unless expressly admitted, the allegations of this paragraph are denied.

168.    Answering the allegations of paragraph 168, TVA admits that they purport to characterize NEPA's implementing regulations, which speak for themselves and provide the best evidence of their contents, and constitute legal conclusions to which no response is required; therefore, TVA denies any allegations contrary to the plain meaning, language, and context of the referenced NEPA regulations. Unless expressly admitted, the allegations of this paragraph are denied.

169.    Answering the allegations of paragraph 169, TVA admits that they contain a partial quote from NEPA's implementing regulations, which speak for themselves and provide the best evidence of their contents, and constitute legal conclusions to which no response is required; therefore, TVA denies any allegations contrary to the plain meaning, language, and context of the referenced NEPA regulations. Unless expressly admitted, the allegations of this

47

paragraph are denied.

170. Answering the allegations of paragraph 170, TVA admits that they purport to characterize NEPA's implementing regulations, which speak for themselves and provide the best evidence of their contents, and constitute legal conclusions to which no response is required; therefore, TVA denies any allegations contrary to the plain meaning, language, and context of the referenced NEPA regulations. Unless expressly admitted, the allegations of this paragraph are denied.

171. The allegations in the first sentence of paragraph 171 purport to characterize the contents of the Final EIS, which speaks for itself and provides the best evidence of its contents, and TVA denies any allegation that is inconsistent with the Final EIS. The allegations in the second sentence of paragraph 171 are vague and therefore denied. TVA avers that GHGs from its coal, gas, and diesel generation assets have been decreasing, with a 63% reduction in total mass carbon emissions since 2005, and GHG emissions from the proposed Cumberland gas plant will also decrease.

172. Answering the allegations of paragraph 172, TVA admits that Plaintiffs appear to have provided a partial quote from the referenced CEQ guidance; however, this guidance speaks for itself, and TVA denies any allegations contrary to the plain meaning, language, and context thereof and further denies that Plaintiffs are authorized to predicate any of their claims in this lawsuit on CEQ guidance. Unless expressly admitted, the allegations of paragraph 172 are denied.

173. Answering the allegations of paragraph 173, TVA admits that Plaintiffs and the EPA submitted comments on the Draft EIS, which TVA considered, responded to, and included in the administrative record for the Final EIS; however, these comments speak for

themselves, and TVA denies any allegations contrary to their plain meaning, language, and context. Unless expressly admitted, the allegations of paragraph 173 are denied.

174.     The allegations in paragraph 174 purport to characterize the Final EIS, which speaks for itself and is the best evidence of its contents; therefore, TVA denies all allegations in paragraph 174 that are inconsistent with the Final EIS. TVA further denies that Plaintiffs are authorized to predicate any of their claims in this lawsuit on the Paris Agreement or the Executive Orders referenced in paragraph 174. TVA further avers that GHG emissions from TVA's coal, gas, and diesel generation assets have been decreasing, with a 63% reduction in total mass carbon emissions since 2005, and that GHG emissions from the proposed Cumberland gas plant will also decrease. TVA denies all remaining allegations in this paragraph.

175.     Denied.

176.     Denied.

177.     Denied.

178.     TVA denies the allegations of the first sentence of paragraph 178. Answering the allegations of the second sentence of paragraph 178, TVA admits that, in May 2023, TVA published a Notice of Intent to prepare an EIS to address the potential impacts associated with the proposed construction and operation of a simple cycle combustion turbine plant and Battery Energy Storage System that would provide approximately 900 MWs and replace generation capacity for a portion of the Cumberland Fossil Plant second unit retirement planned by the end of 2028. Answering the allegations of the third sentence of paragraph 178, TVA admits that, in May 2023, TVA published a Draft EIS to evaluate the potential impacts associated with the proposed retirement of the nine coal-fired units at TVA's Kingston Fossil

Plant and the addition of at least 1,500 MWs of replacement generation and that, in addition to the No Action Alternative, the Draft EIS proposed two Action Alternatives: Alternative A— construction and operation of a single combined cycle combustion turbine gas plant paired with 16 dual-fuel Aeroderivative combustion turbine units, a 3-to-4 MW solar site, and a 100-MW batter storage system on the Kingston Reservation; and Alternative B—construction and operation of multiple solar generation and energy storage facilities at alternate locations. The allegations of the fourth sentence of paragraph 178 are denied. Unless expressly admitted, the allegations of paragraph 178 are denied.

179.    Denied.

180.    Denied.

**Claim Three – Failure to Take a Hard Look at the Impacts of a Connected Action**

181.    All responses stated above are incorporated herein by reference.

182.    Admitted.

183.    Answering the allegations of paragraph 183, TVA admits that they purport to characterize NEPA's implementing regulations, which speak for themselves and provide the best evidence of their contents, and constitute legal conclusions to which no response is required; therefore, TVA denies any allegations contrary to the plain meaning, language, and context of the referenced NEPA regulation. Unless expressly admitted, the allegations of this paragraph are denied.

184.    Answering the allegations of paragraph 184, TVA admits that they contain a partial quote from NEPA's implementing regulations, which speak for themselves and provide the best evidence of their contents, and constitute legal conclusions to which no response is required; therefore, TVA denies any allegations contrary to the plain meaning, language, and

context of the referenced NEPA regulation. Unless expressly admitted, the allegations of this paragraph are denied.

185.    Answering the allegations in paragraph 185, TVA admits that they purport to characterize 40 C.F.R. § 1506.5(b)(2), which speaks for itself and provides the best evidence of its contents, constitute legal conclusions to which no response is required; therefore, TVA denies any allegations contrary to the plain meaning, language, and context of the referenced NEPA regulation. Unless expressly admitted, the allegations of this paragraph are denied.

186.    Answering the allegations of paragraph 186, TVA admits that the proposed pipeline (that will provide for the transportation of natural gas to the plant considered in Alternative A in TVA's Final EIS) is subject to FERC's approval and that FERC, which has exclusive jurisdiction over the authorization to construct and operate the proposed natural gas pipeline, is preparing a separate EIS on the proposed natural gas pipeline. Unless expressly admitted, the allegations of paragraph 186 are denied.

187.    Answering the allegations of paragraph 187, TVA admits that the Final EIS considered "connected actions, such as construction of a natural gas pipeline and transmission system upgrades" and that TVA independently evaluated the potential environmental effects of the pipeline in detail in the Final EIS, but TVA denies the remaining allegations of paragraph 187.

188.    Answering the allegations of paragraph 188, TVA admits the Final EIS treated the proposed pipeline as a related action for purposes of Alternative A in TVA's Final EIS. Except as expressly admitted, the allegations of paragraph 188 are denied.

189.    Denied.

190.    Answering the allegations of paragraph 191, TVA admits that resource reports

51

for the Cumberland Project were prepared by TGP and submitted to FERC; that these resource reports speak for themselves and are the best evidence of their contents; and that TVA lacks sufficient information regarding FERC's use of those reports to respond to the allegations in the second sentence of paragraph 190. Except as expressly admitted, the allegations of paragraph 190 are denied.

191.    TVA admits that the specific language from the final resource reports prepared by TGP quoted in the Final EIS was not included in the Draft EIS because the final resource reports were not available at that time. TVA avers that the Draft EIS included information regarding the pipeline impacts that was available at the time of the Draft EIS preparation and that TVA independently analyzed the information provided in the final resource reports and updated the impacts analysis in the Final EIS, where appropriate. Unless expressly admitted, the allegations of paragraph 191 are denied.

192.    Denied.

193.    Denied.

194.    Answering the allegations in the first sentence of paragraph 194, TVA admits that Plaintiffs appear to have quoted a portion of TVA's response to a comment made by SELC on the Draft EIS, the entire sentence from which Plaintiffs excerpted a quote being "[t]here are advantages and disadvantages to all stream crossing methods; however, the dry open cut approach is the most practical, least impactful, and least risky stream crossing method." The allegations in the second sentence of paragraph 194 are denied. Unless expressly admitted, the allegations of paragraph 194 are denied.

195.    The allegations in the first sentence of paragraph 195 are admitted. The allegations in the second sentence of paragraph 195 are denied.

196.    Denied.

197.    Denied.

198.    Denied.

**Claim Four – Failure to Objectively Consider Reasonable Carbon-Free Energy
Alternatives**

199.    All responses stated above are incorporated herein by reference.

200.    Answering the allegations of paragraph 200, TVA admits that the allegations purport to characterize NEPA and the regulations that implement NEPA, which speak for themselves and provide the best evidence of their contents, and constitute legal conclusions to which no response is required; therefore, TVA denies any allegation that is inconsistent with the plain language, meaning, or context of the statute and regulations. Unless expressly admitted, the allegations of this paragraph are denied.

201.    TVA admits the allegations of the first sentence of paragraph 201. Answering the allegations of the second sentence of paragraph 201, TVA admits that they purport to characterize NEPA and the regulations that implement NEPA, which speak for themselves and provide the best evidence of their contents, and constitute legal conclusions to which no response is required; therefore, TVA denies any allegation that is inconsistent with the plain language, meaning, or context of the statute and regulations. Unless expressly admitted, the allegations of this paragraph are denied.

202.    Answering the allegations of paragraph 202, TVA admits that they purport to characterize NEPA and the regulations that implement NEPA, which speak for themselves and provide the best evidence of their contents, and constitute legal conclusions to which no response is required; therefore, TVA denies any allegation that is inconsistent with the plain language, meaning, or context of the statute and regulations. Unless expressly admitted, the

allegations of this paragraph are denied.

203.    Answering the allegations of paragraph 203, TVA admits that they contain a quotation from a portion of the cited source; however, the cited source speaks for itself and provides the best evidence of its contents, and constitute legal constitute legal conclusions to which no response is required; therefore, TVA denies any allegations contrary to plain meaning, language, and context of the cited source. Unless expressly admitted, the allegations of paragraph 203 are denied.

204.    Answering the allegations of paragraph 204, TVA admits that they appear to quote from, and purport to characterize, NEPA's implementing regulations, which speak for themselves and provide the best evidence of their contents, and constitute legal conclusions to which no response is required; therefore, TVA denies any allegation that is inconsistent with the plain language, meaning, or context of the referenced NEPA regulations. Unless expressly admitted, the allegations of this paragraph are denied.

205.    Answering the allegations of paragraph 205, TVA admits that the allegations purport to characterize NEPA and the regulations that implement NEPA, which speak for themselves and provide the best evidence of their contents, and constitute legal conclusions to which no response is required; therefore, TVA denies any allegation that is inconsistent with the plain language, meaning, or context of the statute and regulations. Unless expressly admitted, the allegations of this paragraph are denied.

206.    Answering the allegations of paragraph 206, TVA admits that the quoted language appears to be a partial quotation from the Final EIS; however, the Final EIS speaks for itself, and TVA denies any allegations contrary to the plain meaning, language, and context of the Final EIS. TVA avers that the referenced quotation pertained to Alternatives B

and C, and further states that this section of the Final EIS went on to explain that another reason Alternative C was not chosen as the preferred alternative was because it "would not provide the firm, dispatchable generation needed to meet year-round generation needs and therefore would raise challenges with grid reliability, nor would it meet TVA's least-cost mandate." Unless expressly admitted, the allegations of paragraph 206 are denied.

207.   Denied.

208.   Admitted.

209.   TVA denies the allegations of paragraph 209.

210.   Answering the allegations of paragraph 210, TVA admits that this paragraph contains a partial quotation from a report included in the Final EIS that analyzed and rebutted the assertions in the reports submitted by Plaintiffs during the comment period for the Draft EIS; however, this partial quotation speaks for itself, and TVA denies any allegations contrary to the plain meaning, language, and context of the reports.

211.   Answering the allegations in the first sentence of paragraph 211, TVA admits that transmission upgrades and cost were among the reasons for not choosing Alternative C as the preferred alternative. Answering the allegations in the second sentence of paragraph 211, TVA admits that it provided an analysis of pipeline impacts under Alternative A in the FEIS. TVA denies the remaining allegations in the second sentence of paragraph 211. Unless expressly admitted, the allegations in paragraph 211 are denied.

212.   Denied.

213.   Denied.

214.   Denied.

215.   Answering the allegations of paragraph 215, TVA admits that Plaintiffs

submitted a report prepared by Michael Goggin during the comment period for the Draft EIS that came to the conclusions outlined, which TVA considered, responded to, and included in the administrative record for the Final EIS, but denies that the report's analysis and conclusions are correct. Unless expressly admitted, the allegations of paragraph 215 are denied.

216.　Denied.

217.　Denied.

218.　Denied.

**Claim Five – Failure to Rely on Accurate Economic Assumptions to Compare Alternatives**

219.　All responses stated above are incorporated herein by reference.

220.　Answering the allegations of paragraph 220, TVA admits that they purport to characterize NEPA's implementing regulations, which speak for themselves and provide the best evidence of their contents, and constitute legal conclusions to which no response is required; therefore, TVA denies any allegation that is inconsistent with the plain language, meaning, or context of the referenced NEPA regulations. Unless expressly admitted, the allegations of this paragraph are denied.

221.　Answering the allegations of paragraph 221, TVA admits that they purport to characterize NEPA's implementing regulations, which speak for themselves and provide the best evidence of their contents, and constitute legal conclusions to which no response is required; therefore, TVA denies any allegation that is inconsistent with the plain language, meaning, or context of the referenced NEPA regulations. Unless expressly admitted, the allegations of this paragraph are denied.

222.　Answering the allegations of paragraph 222, TVA admits that they contain a

partial quote from the cited source, which speaks for itself and provides the best evidence of its contents, and constitute a legal conclusion to which no response is required; therefore, TVA denies any allegations contrary to the plain meaning, language, and context of the cited source.

223. Answering the allegations of paragraph 223, TVA admits that they purport to characterize NEPA, which speaks for itself and provides the best evidence of its contents, and constitute legal conclusions to which no response is required; therefore, TVA denies any allegation that is inconsistent with the plain language, meaning, or context of the statute. Unless expressly admitted, the allegations of this paragraph are denied.

224. Answering the allegations of paragraph 224, TVA admits that they purport to characterize NEPA, which speaks for itself and provides the best evidence of its contents, and constitute legal conclusions to which no response is required; therefore, TVA denies any allegation that is inconsistent with the plain language, meaning, or context of the statute. Unless expressly admitted, the allegations of this paragraph are denied.

225. The allegations in paragraph 225 purport to characterize 16 U.S.C. § 831m-1(b)(1), 16 U.S.C. § 831m-1(b)(3), and *Kentucky Coal Ass'n, Inc. v. TVA*, 804 F.3d 799, 802 (6th Cir. 2015), which speak for themselves and provide the best evidence of their contents, and constitute legal conclusions to which no response is required; therefore, any allegations contrary to the plain meaning, language, and context of the statutory provisions and/or inconsistent with the case when read in context are denied. All remaining allegations are denied.

226. Answering the allegations of paragraph 226, TVA admits that the allegations quote from and purport to characterize Executive Order 13,990, which speaks for itself, but

TVA denies any characterization of the Executive Order that is inconsistent with its plain language and further denies that Plaintiffs are authorized to predicate any of their claims in this lawsuit on Executive Order 13,990. Except as expressly admitted, the allegations of paragraph 226 are denied.

227.    Admitted.

228.    TVA admits that it evaluated the costs of the three alternatives analyzed in the Cumberland Final EIS, but TVA denies the remaining allegations in paragraph 228 as vague and lacking context sufficient to permit a response.

229.    Answering the allegations of paragraph 229, TVA admits that TVA determined that a combined-cycle gas plant was the best overall solution to replace the generation supplied by the retiring coal unit at Cumberland and to provide low-cost, reliable, and cleaner energy to the TVA power system and admits that Appendix B of the Final EIS analyzed the relevant assumptions and risks for the total system costs comparison of the alternatives. Unless expressly admitted, the allegations of paragraph 229 are denied.

230.    Answering the allegations of paragraph 230, TVA admits that Appendix B of the Final EIS lists what costs were included in the total system costs comparison. Unless expressly admitted, the allegations of paragraph 230 are denied.

231.    Answering the allegations of paragraph 231, TVA admits that neither the costs for CCS nor the use of hydrogen as an alternative fuel were accounted for in the cost assumptions contained in the Final EIS because "[a]t this time, high costs and immaturity of alternative fuels and CCS remain barriers to widespread commercial use" and therefore neither "were . . . considered viable within the time frame proposed for the first unit retirement at CUF." Except as expressly admitted, the allegations of paragraph 231 are denied.

58

232.    Answering the allegations of paragraph 232, TVA admits that the Final EIS discusses mitigation strategies such as carbon capture and hydrogen co-firing. Unless expressly stated, the allegations in paragraph 232 are denied.

233.    TVA denies the allegations in paragraph 233.

234.    Answering the allegations of paragraph 234, TVA admits that it contains a partial quote from the Final EIS; however, the Final EIS speaks for itself and is the best evidence of its contents, and TVA denies any allegations contrary to the plain meaning, language, and context of the Final EIS. Unless expressly admitted, the allegations of paragraph 234 are denied.

235.    Answering the allegations of paragraph 235, TVA admits that it is evaluating sites within the TVA service territory for their suitability for carbon capture and sequestration or storage so that TVA can take advantage of this technology if and when this technology becomes technically and economically feasible.

236.    Answering the allegations of paragraph 236, TVA admits that the Final EIS assumes a 30-year operating life for the combined-cycle plant proposed in Alternative A. Unless expressly admitted, the allegations of paragraph 236 are denied.

237.    Answering the allegations of the first sentence of paragraph 237, TVA is without knowledge or information sufficient to form a belief as to the truth of the allegations and, therefore, denies the same. Answering the allegations of the second sentence of paragraph 237, TVA admits that the allegations quote from and purport to characterize Executive Order 14,082, which speaks for itself, but TVA denies any characterization of the Executive Order that is inconsistent with its plain language and further denies that Plaintiffs are authorized to predicate any of their claims in this lawsuit on Executive Order 14,082. Unless expressly

admitted, the allegations of paragraph 237 are denied.

238. Answering the allegations of the first sentence of paragraph 238, TVA's aspiration to reach net-zero carbon emissions envisions the retirement of its coal fleet by 2035. Answering the allegations of the second sentence of paragraph 238, TVA admits that it is executing a plan to achieve a 70% reduction in emissions by 2030, sees a path to achieve 80% carbon reduction by 2035, and aspires to achieve net-zero carbon emissions by 2050. Unless expressly admitted, the allegations of paragraph 238 are denied.

239. Answering the allegations of paragraph 239, TVA admits that carbon capture technology may be available for utilization at certain gas plants in the future. Unless expressly admitted, the allegations of paragraph 239 are denied.

240. Answering the allegations of the first two sentences of paragraph 240, TVA admits that Plaintiffs have quoted statements contained in EPA's comments on the Draft EIS, which speak for themselves and provide the best evidence of their contents and which TVA considered, responded to, and included in the administrative record for the Final EIS; however, TVA denies that the referenced statements are related, denies that the referenced portion of the comments contain a "request[]" from EPA, and denies any allegations contrary to the plain meaning, language, and context of the comments or TVA's responses thereto. Answering the allegations of the third sentence of paragraph 240, TVA admits that Plaintiffs have quoted a statement contained in EPA's comments on the Draft EIS, which speak for themselves and provide the best evidence of their contents and which TVA considered, responded to, and included in the administrative record for the Final EIS; however, TVA denies any allegations contrary to the plain meaning, language, and context of the comments or TVA's responses thereto. To the extent there are any further allegations in this paragraph,

they are denied.

241. Denied.

242. Denied.

243. TVA denies the allegations of paragraph 243.

244. Denied.

245. Denied.

246. Answering the allegations of paragraph 246, TVA admits that the allegations purport to characterize the IRA and that provisions of the IRA provide incentives for various forms of clean energy, some of which may be available to TVA in the future; however, TVA denies any allegation in this sentence that is inconsistent with the plain language of the IRA. Except as expressly admitted, the allegations of paragraph 246 are denied.

247. Answering the allegations in paragraph 247, TVA admits that it quotes language from the Cumberland Final EIS, which speaks for itself and provides the best evidence of its contents, and any allegations contrary to its plain meaning, language, and context are denied.

248. Answering the allegations of paragraph 248, TVA admits that on November 29, 2022, the Internal Revenue Service announced guidance on wage and apprenticeship requirements for enhanced credits/deductions; however, this guidance speaks for itself, and TVA denies any allegations contrary to the plain meaning, language, and context of the guidance. Except as expressly admitted, the allegations of paragraph 248 are denied.

249. Answering the allegations of the first sentence of paragraph 249, TVA admits that the IRA contains certain tax credits for deployment of energy generation systems like solar and battery-storage resources. Answering the allegations of the second sentence of

61

paragraph 249, TVA is without knowledge or information sufficient to form a belief as to the truth thereof because the "domestic content requirements" referred to in the allegations are not identified. Unless expressly admitted, the allegations of paragraph 249 are denied.

250. TVA denies the allegations of paragraph 250.

251. Denied.

252. Denied.

253. Denied.

254. Denied.

**Claim Six – Failure to Supplement the Final Environmental Impact Statement**

255. All responses stated above are incorporated herein by reference.

256. Answering the allegations of paragraph 256, TVA admits that they purport to characterize NEPA and NEPA's implementing regulations, which speak for themselves and provide the best evidence of their contents, and constitute legal conclusions to which no response is required; therefore, TVA denies any allegation that is inconsistent with the plain language, meaning, or context of the statute or its implementing regulations. Unless expressly admitted, the allegations of this paragraph are denied.

257. Answering the allegations of paragraph 257, TVA admits that Plaintiffs appear to have quoted from the cited case, with a notable omission which would have completed the quoted sentence. TVA denies the allegations of this paragraph to the extent they are inconsistent with the case when read in context.

258. Denied.

259. The allegations of paragraph 259 are denied, except TVA admits that TVA's FOIA officer responded in writing on April 11, 2023, to SELC's March 15, 2023 FOIA

request and that TVA's FOIA response speaks for itself and is the best evidence of its contents. Unless expressly admitted, the allegations of paragraph 259 are denied.

260. Denied.

261. Denied.

262. Denied.

## ANSWER TO PRAYER FOR RELIEF

TVA denies that Plaintiffs are entitled to the relief requested, or to any relief.

## AFFIRMATIVE DEFENSES

TVA pleads the following affirmative defenses:

### Second Defense

All allegations of the Amended Complaint not admitted, denied, or explained are denied generally.

### Third Defense

Plaintiffs' claims are barred, in whole or in part, by the doctrine of laches.

### Fourth Defense

The actions taken by TVA and challenged herein were reasonable and consistent with and authorized by the TVA Act and applicable federal statutes and regulations and are reasonably related to the governmental functions carried out by TVA, and such actions were not arbitrary, capricious, or otherwise contrary to law.

### Fifth Defense

Plaintiffs' NEPA claims are barred to the extent they fail to state a claim upon which relief may be granted.

## Sixth Defense

Plaintiffs' claims are barred to the extent the APA does not authorize judicial review thereof.

## Seventh Defense

TVA's least-cost planning decisions are committed to agency discretion.

## Eighth Defense

TVA reserves the right to amend its Answer as to its existing defenses and/or to assert such other and additional defenses available to it at such time and to such extent as is warranted and as may be revealed as the case progresses or when justice so requires.

WHEREFORE, TVA prays that this action be dismissed and that TVA recover its costs and such other relief, legal and equitable, to which it is entitled.

Respectfully submitted,

*s/David D. Ayliffe*
David D. Ayliffe, (TN BPR 024297)
Director of Litigation
F. Regina Koho (TN BPR 029261)
Lane E. McCarty (TN BPR 028340)
Office of the General Counsel
Tennessee Valley Authority
400 West Summit Hill Drive
Knoxville, Tennessee 37902-1401
Telephone 865.632.8964
ddayliffe@tva.gov

Attorneys for Tennessee Valley Authority

119459870

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was filed electronically through the Court's Electronic Filing System. Notice of this filing was sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt and as listed below. Parties may access these filings through the Court's electronic filing system.

Amanda Garcia, Esq.
O.W. "Trey" Bussey, Esq.
1033 Demonbreun Street, Suite 205
Nashville, Tennessee 37203
Telephone: (615) 921-9470
Facsimile: (615) 921-8011
tbussey@selctn.org
agarcia@selctn.org

Gregory Buppert, Esq.
120 Garrett Street, Suite 400
Charlottesville, Virginia 22902
Telephone: (434) 977-4090
Facsimile: (434) 993-5549
gbuppert@selcva.org

*Attorneys for Plaintiffs*

s/David D. Ayliffe
Attorney for Tennessee Valley Authority