IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | |
|---|---|
| **APPALACHIAN VOICES** *et al.* ) | |
| ) | Case No. 3:23-cv-00604 |
| v. ) | Judge Richardson |
| ) | Magistrate Judge Holmes |
| **TENNESSEE VALLEY AUTHORITY** ) | |

**O R D E R**

Pending before the Court are two motions: (1) Plaintiffs Appalachian Voices, Center for Biological Diversity, and Sierra Club's ("Plaintiffs") motion to complete the administrative record (Docket No. 28), to which Defendant Tennessee Valley Authority ("TVA") filed a response in opposition (Docket No. 29) and Plaintiffs filed a reply in support (Docket No. 31), and (2) the parties' joint motion for oral argument (Docket No. 32).

For the reasons detailed below, Plaintiffs' motion to complete the administrate record (Docket No. 28) is **PARTIALLY GRANTED** with reservation of remaining issues, and the parties' joint motion for oral argument (Docket No. 32) is **GRANTED**.[1]

### I. BACKGROUND

Plaintiffs seek judicial review under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701–06, of TVA's decision to build a gas-fired power plant in Middle Tennessee (the "Cumberland Gas Plant"). (Amended Complaint, Docket No. 16 at ¶ 10.) Plaintiffs claim that TVA failed to comply with the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321, *et seq.*, because TVA did not "fairly" or "adequately" consider the "significant impacts" that its decision to build the Cumberland Gas Plant would have on the climate, environment, and power customers.

---

[1] Following entry of this Order, the Clerk is, however, directed to reinstate the motion to complete the administrative record (Docket No. 28) as active pending further order fully resolving the motion following the hearing.

(*Id.* at ¶¶ 1–2.) Plaintiffs assert that TVA failed to take the following actions, all of which were "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" under NEPA, 5 U.S.C. § 706(2)(A):

1. Issue a record of decision before committing to Alternative A, the Cumberland Gas Plant;
2. Take a hard look at the climate consequences of the Cumberland Gas Plant;
3. Take a hard look at the impacts of a connected action;
4. Objectively consider reasonable carbon-free energy alternatives;
5. Rely on accurate economic assumptions to compare alternatives; and
6. Supplement the final environmental impact statement.

(*Id.* at ¶¶ 148–262.) In response, TVA broadly denies that it violated NEPA. Instead, it argues that it complied with all requirements related to the environmental impact statement ("EIS") that it released related to its decision to build the Cumberland Gas Plant. (Answer, Docket No. 17.)

The Court set a deadline for TVA to file the administrative record (Scheduling Order, Docket No. 23 at ¶ K), which it did in a timely manner (Notice of Filing, Docket No. 27). However, Plaintiffs contend that the administrative record is incomplete and certain records – including contracts between TVA and third parties, and materials cited in the EIS – should be added. (Motion, Docket No. 28.) TVA argues that the administrative record is complete and that no other documents need to be included. (Response, Docket No. 29.)

## II. LEGAL STANDARD

Judicial review of agency actions under NEPA is governed by the APA, which provides, in part, that a Court action shall "hold unlawful and set aside agency action, findings, and conclusions" that are found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). An agency rule would be "arbitrary and capricious"

if the agency "has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfr. Ass'n of the United States, Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). Under NEPA, "[t]he role of the courts . . . is simply to ensure that the agency has adequately considered and disclosed the environmental impact of its actions and that its decision is not arbitrary and capricious." *Kelley v. Selin*, 42 F.3d 1501, 1512 (6th Cir. 1995).

To decide whether an agency complied with NEPA under the APA, the Court must "review the whole record or those parts of it cited by a party." 5 U.S.C. § 706. The administrative record includes "all materials 'compiled' by the agency that were before the agency at the time the decision was made." *Sierra Club v. Slater*, 120 F.3d 623, 638 (6th Cir. 1997) (citing *James Madison Ltd. by Hecht v. Ludwig*, 82 F.3d 1085, 1095 (D.C. Cir. 1996)). Under the APA, to assess the legality of the agency's action, the Court must have access to the full administrative record that was before the decisionmaker at the time the decision was made. *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 419–420 (1971) (abrogated on other grounds by *Califano v. Sanders*, 430 U.S. 99, 105 (1977)). "[T]he focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *Kroger Co. v. Reg'l Airport Auth. of Louisville & Jefferson Cnty.*, 286 F.3d 382, 387 (6th Cir. 2002) (quoting *Camp v. Pitts*, 411 U.S. 138, 142 (1973)).

With respect to what is properly included in the administrative record, it is "axiomatic that documents created by an agency itself or otherwise located in its files were before it." *Cnty. of San Miguel v. Kempthorne*, 587 F. Supp. 2d 64, 76 (D.C. Cir. 2008). However, "deliberative process

3

materials" are generally exempted from inclusion in the record to protect the quality of agency decisions by ensuring opening and candid conversations. *City of Crossgate v. U.S. Dep't of Veterans Affs.*, No. 3:18-cv-167-CHB-CHL, 2020 WL 1812014, at *3 (W.D. Ky. Feb. 12, 2020) (citing *San Luis Obispo Mothers for Peace v. Nuclear Regul. Comm'n*, 789 F.2d 26, 44–45 (D.C. Cir. 1986)). Nevertheless, an agency "may not exclude information from the record simply because it did not 'rely' on the excluded information in its final decision." *Banner Health v. Burwell*, 126 F. Supp. 3d 28, 58–59 (D.D.C. 2015) (citing *Maritel, Inc. v. Collins*, 422 F. Supp. 2d 188, 196 (D.D.C. 2006)).

> Rather, "a complete administrative record should include all materials that might have influenced the agency's decision[.]" "[W]hile it is true that data and analysis compiled by subordinates may be properly part of the administrative record despite not having actually passed before the eyes of the [decisionmaker]," to be included in the Administrative Record, "the data or analysis must be sufficiently integral to the final analysis that was considered by the [agency], and the [agency's] reliance thereon sufficiently heavy, so as to suggest that the decisionmaker constructively considered it."

*Id.* at 59 (internal citations omitted).

The administrative record filed by an agency has a "presumption of regularity," though the record is not always complete as filed. *Protect Our Aquifer v. Tenn. Valley Auth.*, No. 2:20-cv-02615-TLP-atc, 2022 WL 341014, at *2 (W.D. Tenn. Jan. 24, 2022) (quoting *Ohio Coal Ass'n v. Perez*, No. 14-2646, 2017 WL 4900165, at *3 (S.D. Ohio, Feb. 27, 2017)). Some circumstances "justify supplementation of the administrative record" with additional documents. *Latin Ams. for Soc. & Econ. Dev. v. Adm'r of the Fed. Highway Admin.*, 756 F.3d 447, 465 (6th Cir. 2014). For example, if a party can present "clear evidence" to show that documents were before the decisionmaker but are missing from the record, courts will add those documents to the administrative record. *Protect Our Aquifer*, 2022 WL 341014 at *2 (citing *Bullwinkel v. U.S. Dep't of Energy*, No. 11-1082, 2013 WL 384902, at *2 (W.D. Tenn. Jan. 16, 2013)). A party can produce

4

"clear evidence" that the record is incomplete by showing that "an agency has deliberately or negligently excluded certain documents from the record." *Id.* (citing *Bullwinkel*, 2013 WL 384902 at *2).

Accordingly, merely alleging that a record is incomplete is not enough to rebut the "presumption of regularity." If this were the case, "there would be no presumption of a complete record because the possibility that internal, deliberative documents exist would occur in every APA case." *Blue Ocean Institute v. Gutierrez*, 503 F. Supp. 2d 366, 371 (D.D.C. 2007). Instead, the movant "must identify reasonable, non-speculative grounds for its belief that the documents were . . . not included in the record," like by attaching the allegedly relevant documents to their motion, and "prov[ing] that the documents were before the actual decisionmakers." *Protect Our Aquifer*, 2022 WL 341014 at *2 (citing *Sara Lee Corp. v. Am. Bakers Ass'n*, 252 F.R.D. 31, 34 (D.D.C. 2008)).[2]

---

[2] In its response to the motion, TVA asserts that, when reviewing a request to complete the administrative record, "a court must ascertain whether the record 'is so inadequate as to prevent the reviewing court from effectively determining whether the agency considered all environmental consequences of its proposed actions.'" (Response, Docket No. 29 at 9 (quoting *Little Traverse Lake Prop. Owners Assoc. v. Nat'l Park Svc.*, 883 F.3d 644, 658 (6th Cir. 2018)).) Plaintiffs argue that the Court should not apply this standard because the case from which TVA took this statement of law is distinguishable. (Reply, Docket No. 31 at 1–2.) The Court agrees with Plaintiffs that *Little Traverse Lake* differs from this matter and finds that the quotation provided by TVA does not support TVA's contention.

First, unlike in this case, in *Little Traverse Lake*, the Sixth Circuit was deciding whether to include in the record documents that the plaintiffs could have submitted during a public comment period, but instead omitted, and were, therefore, unequivocally never part of the record. 883 F.3d at 658. Second, the language that TVA took from *Little Traverse Lake* comes from a Second Circuit opinion in which the court examined the district court's order that the defendants submit additional affidavits and legal memoranda detailing "the reasons for and effectiveness of the proposed mitigation measure." *Nat'l Audubon Soc'y v. Hoffman*, 132 F.3d 7, 11 (2d Cir. 1997). In other words, documents that were never arguably in the record. To determine whether it was appropriate for the district court to review these additional affidavits and memoranda, the Second Circuit discussed the "record rule" and when a court could deviate from that rule and conduct an "extra-record investigation." *Id.* at 14–15. The Second Circuit stated, in full:

5

## III.   ANALYSIS

In their motion, Plaintiffs ask the Court to complete the record with two categories of documents that TVA allegedly "deliberately or negligently withheld": (1) contracts that TVA entered into with Tennessee Gas Pipeline Company ("TGP") and with General Electric Company ("GE"); and (2) studies and plans that TVA relied on in its Final EIS. (Memorandum, Docket No. 28-1 at 3.) In this order, the Court will resolve the parties' dispute regarding the first category of documents, but will reserve a ruling on the second category of documents pending oral argument, as detailed below.

As a preliminary matter, Plaintiffs argue that they are seeking to "complete" rather than "supplement" the record, and believe that the distinction makes a difference. (*Id.* at 3–4 n.2.) Plaintiffs concede that the Sixth Circuit has not "formally differentiated" between completion and supplementation, but they cite to one case from a district court in the Sixth Circuit that discussed how the two differ. (*Id.* (citing *Ohio Coal Ass'n*, 2017 WL 4900165 at *3; *Weiss v. Kempthorne*, No. 1:08-CV-1031, 2009 WL 2095997, at *1–2 (W.D. Mich. July 13, 2009)).) TVA, on the other hand, argues that the two terms are synonymous. (Response, Docket No. 29 at 9 n.8. (citing *Protect*

---

> Nonetheless, deviation from the record rule, even in the review of NEPA decisions, is limited. While we allow the consideration of extra-record evidence, review of an agency's action is not *de novo*. Courts may conduct plenary review, and consider additional information obtained from the parties through affidavits or testimony, only when the administrative record is so inadequate as to prevent the reviewing court from effectively determining whether the agency considered all environmental consequences of its proposed action.

*Id.* at 15. As can be seen from this full quote, neither the Second nor Sixth Circuits held that, <u>when facing a request to complete an administrative record</u>, a court must determine whether the record "is so inadequate as to prevent the reviewing court from effectively determining whether the agency considered all environmental consequences of its proposed actions." Accordingly, this Court will not apply the standard suggest by TVA.

*our Aquifer*, 2022 WL 341014 at *1 n.3).) Therefore, TVA consistently refers to Plaintiffs' request as one to supplement, rather than complete, the record.

The Court agrees with TVA that the Sixth Circuit has used the two terms interchangeably and, therefore, the same standard applies to Plaintiffs' request whether it is termed as one to "complete" or "supplement" the record. However, although the standard is the same – Plaintiffs must show "clear evidence" that the record is incomplete by showing that TV "deliberately or negligently excluded certain documents from the record" – the Court understands that Plaintiffs are seeking to add documents or complete the record to include documents that they claim "were actually before TVA when it made its decision" and not to supplement the record with documents that "TVA should have considered but did not." (Docket No. 28-1 at 3-4 n.2.)

1. **TVA's Contract with TGP**

Plaintiffs argue that the contract that TVA entered into with TGP (the "Precedent Agreement") should be added to the administrative record because TVA directly or indirectly considered the contract when making its final decision. (Memorandum, Docket No. 28-1 at 11–14.) According to Plaintiffs, the Precedent Agreement obligated TGP to build a gas pipeline to serve the Cumberland Gas Plant and obligated TVA to purchase the entirety of that gas pipeline's shipping capacity from TGP for twenty years. (*Id.* at 4.) Plaintiffs believe that one particular section of the Precedent Agreement is especially important because they claim it "allowed TVA to terminate the contract 'by no later than December 1, 2022,' based on the outcome of its NEPA review" and therefore shows that TVA violated NEPA by committing agency resources to the Cumberland Gas Plant prior to concluding the environmental review process on January 20, 2023. (*Id.*)

The Precedent Agreement has its own procedural background. In August 2021, the Southern Environmental Law Center, which is Plaintiffs' counsel in this lawsuit, submitted a request to TVA under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. *S. Env't Law Ctr. v. Tenn. Valley Auth.*, 659 F. Supp. 3d 902, 907 (E.D. Tenn. 2023). The request was for "[r]ecords of communications . . . with TGP . . . regarding possible or planned gas infrastructure projects, including pipelines, compressor stations, and gas plants, to be constructed after January 2021." *Id.* In response to the FOIA request, TVA produced a redacted copy of the Precedent Agreement, among other documents. *Id.* Plaintiffs included this redacted version of the Precedent Agreement as an attachment to their comments on TVA's draft EIS. (G. Buppert Declaration, Docket No. 28-2 at ¶ 7.) Accordingly, that redacted version of the Precedent Agreement is in the administrative record (the "Original Precedent Agreement"). (AR 035473–529.)

After some discussion among the parties, the Southern Environmental Law Center administratively appealed TVA's decision to redact portions of the Precedent Agreement and filed a lawsuit in the United States District Court for the Eastern District of Tennessee. *S. Env't Law Ctr.*, 659 F. Supp. 3d at 907. During settlement discussions, TVA provided a less redacted (albeit still redacted) version of the contract (the "New Precedent Agreement"), which Plaintiffs now seek to include in the administrative record. *Id.* at 910. Plaintiffs filed the New Precedent Agreement as an exhibit to the declaration of Gregory Buppert, one of Plaintiffs' counsel. (Docket No. 28-3.)

The parties disagree over whether the New Precedent Agreement should be added to the record. Plaintiffs assert that TVA independently considered the Precedent Agreement (presumably without any redactions) either directly or indirectly when it made its decision to build the Cumberland Gas Plant. Plaintiffs argue that TVA NEPA staff directly considered the Precedent Agreement when preparing the Final EIS and point to several documents within the record to

support this assertion. First, they note that Plaintiffs themselves attached a copy of the Precedent Agreement for TVA's review and that the Environmental Protection Agency raised the Precedent Agreement in public comments. Next, they state that the Final EIS references the Precedent Agreement several times, which is evidence that the TVA considered the Precedent Agreement. For example, Plaintiffs point to a section of the Final EIS titled "Environmental Impact Statement Overview," which states:

> NEPA requires federal agencies to consider the environmental effects of their proposed actions in their decision-making. Actions, in this context, can include new and continuing activities that are conducted, financed, assisted, regulated, or approved by federal agencies, as well as new or revised plans, policies, or procedures. The NEPA review process is intended to ensure federal agencies consider the environmental effects of their actions in the decision-making process (40 CFR Parts 1500–1508). . . .
>
> * * *
>
> Under Alternative A, Tennessee Gas Pipeline Company, L.L.C. (TGP), a subsidiary of Kinder Morgan, would construct and operate a 32-mile natural gas pipeline pursuant to an agreement with TVA.[2] . . .
>
> > Footnote 2: TVA has entered into a **precedent agreement** with TGP. A **precedent agreement** between a transporter and a shipper of natural gas is a preliminary agreement to enter into a future firm gas transportation agreement if certain conditions are met.

(AR 001837 (emphasis added).) Plaintiffs also point to Appendix O, "Responses to Public Comments of the Draft EIS," of the Final EIS, which includes the following public comments and responses from TVA:

> 8. TVA appears to have predetermined the outcome of the NEPA process by singing binding agreements for the methane gas Alternative A would use. Since TVA signed a **precedent agreement** to purchase gas supply from Tennessee Gas Pipeline prior to issuing its DEIS preference for Alternative A, TVA should discuss how it maintains objectivity in the comparison of alternatives. (Commentors: US Environmental Protection Agency, Southern Environmental Law Center)

9

>    Response: TVA executed a **precedent agreement** with Tennessee Gas Pipeline on August 11, 2021. The **precedent agreement** is a preliminary agreement to enter into a future firm gas transportation agreement if certain conditions precedent are met. These conditions include completion of TVA's environmental review for Cumberland Fossil Plant and an affirmative decision by TVA to select Alternative A and develop a new CC plant at the Cumberland site. TVA's objectivity is not impacted by the **precedent agreement** because it does not constitute an irreversible or irretrievable commitment from TVA to enter into a gas transportation agreement with (or to purchase gas supply from) Tennessee Gas Pipeline. . . .
>
>    * * *
>
>    35.  TVA should also adopt the recommendations of the EPA's Methane Challenge program to reduce potential GHG emissions attributable to the project. . . . (Commentor: US Environmental Protection Agency)
>
>    Response: TVA has executed a **precedent agreement** with Tennessee Gas Pipeline to construct the natural gas pipeline lateral. Tennessee Gas Pipeline is a subsidiary of Kinder Morgan, which is a member of the ONE Future Coalition and has joined the Methane Challenge program as a ONE Future commitment option Partner. . . .

(AR 003277, 003300 (emphasis added).) Finally, Plaintiffs point to a January 10, 2023 memorandum from TVA's COO to its CEO in which the COO recommends that TVA adopt Alternative A and describes the Precedent Agreement. (AR 003443.)

In response, TVA argues that the Precedent Agreement – which TVA states was entered into "to preserve the viability of the Preferred Alternative while the [Final] EIS was being prepared" – is not relevant to the scope of this litigation, which is whether TVA took the requisite "hard look" at the environmental consequences of its actions. (Response, Docket No. 29 at 13.) In addition, TVA asserts that Plaintiffs have failed to show that TVA "relied heavily" on the Precedent Agreement because the documents from the record to which Plaintiffs refer do not evidence the requisite reliance. (*Id.*) Finally, TVA argues that a review of a predetermination claim, such as the one Plaintiffs make in this lawsuit, is "limited to the four corners of the EIS" so review of the Precedent Agreement is unnecessary. (*Id.* at 16.)

Having considered the parties' arguments, the Court agrees with Plaintiffs that the New Precedent Agreement (Docket No. 28-3) should be included in the record. The Court finds that Plaintiffs have identified "reasonable, non-speculative grounds" for their belief that the New Precedent Agreement was not included in the record by attaching the New Precedent Agreement to their motion and by proving that the New Precedent Agreement was before the actual decisionmakers. *Protect Our Aquifer*, 2022 WL 341014 at *2 (citing *Sara Lee Corp.*, 252 F.R.D. at 34).

There is no question that TVA entered into the Precedent Agreement on August 11, 2021 and that it relates to TVA's development of the Cumberland Gas Plant. The Final EIS says so itself: "Under Alternative A, Tennessee Gas Pipeline Company, L.L.C. (TGP), a subsidiary of Kinder Morgan, would construct and operate a 32-mile natural gas pipeline pursuant to an agreement with TVA." (AR 001837.) Accordingly, it is clear that the Precedent Agreement was before the actual decisionmakers. The Final EIS shows that TVA pointed to the Precedent Agreement to respond to certain public comments, including to show that its contractual partner was part of the EPA's Methane Challenge program. (AR 003300.) In other words, TVA used the Precedent Agreement to address and potentially assuage public concerns regarding the building of the Cumberland Gas Plant. This clearly shows that the TVA had the Precedent Agreement before it when issuing the Final EIS on its decision to build the Cumberland Gas Plant.

Importantly, a version of the Precedent Agreement is already in the record. (AR 035473–529.) The only difference between that version and the one that Plaintiffs wish to add to the record is that more information is redacted in the existing version. Strangely, the parties do not address this fact. Instead, they make arguments as though this document was not already in the record, albeit in a slightly different version. The Court, however, finds the existence of the Precedent

Agreement in the record to be important because it further bolsters Plaintiffs' argument that the TVA had the contract before it when making its decision and weakens TVA's argument otherwise.

For these reasons, the Court finds that the New Precedent Agreement (Docket No. 28-3) is properly included in the record.

## 2. TVA's Contract with GE

Plaintiffs also argue that the contract that TVA entered into with GE (the "GE Contract") should be added to the administrative record because TVA directly or indirectly considered the contract when making its final decision. (Memorandum, Docket No. 28-1 at 11, 14.) Plaintiffs describe the GE Contract, which was entered into on December 22, 2022, as one to "purchase gas-fired 'power island equipment,' including 'advanced-class gas turbine-generators (GTGs), two steam turbine generators (STGs), two heat recovery steam generators (HRSGs), and all required auxiliary equipment.'" (*Id.* at 8.) According to a December 22, 2022 email from TVA's CEO to TVA's Board, the GE Contract allowed TVA to "purchase power island equipment for a potential Combined Cycle (CC) plant as replacement for one existing coal unit at Cumberland." (Email, Docket No. 28-5 at 2.) This "long-lead procurement action[]" was "needed to maintain TVA's current preferred retirement and replacement schedule for the first unit at Cumberland, and to lock in pricing on a potential CC plant at Kingston." (*Id.*)

The GE Agreement has a much less contentious procedural background than the Precedent Agreement. In January 2023, the Southern Environmental Law Center submitted a request to TVA under FOIA for "records related to 'procurement actions for the Cumberland Fossil Plant' and any reports from the CEO to the TVA Board regarding actions taken to implement the Cumberland project." (Memorandum, Docket No. 28-1 at 8.) In response, TVA produced a redacted copy of its

12

GE Contract (Docket No. 28-4) and the December 20, 2022 email from TVA's CEO to the Board (Docket No. 28-5). (Memorandum, Docket No. 28-1 at 8.)

Plaintiffs now wish to include the GE Contract (but not the email) in the administrative record. Plaintiffs argue that the GE Contract was before TVA's CEO and that the CEO considered the contract at the time of the decision to build the Cumberland Gas Plant, and point to the December 22, 2022 email as evidence. (*Id.* at 11.) That email stated:

> On December 22, 2022, and pursuant to my delegated authority, I approved TVA entering into a contract with General Electric to purchase power island equipment for a potential Combined Cycle (CC) plant as replacement for one existing coal unit at Cumberland. The contract also includes an option for TVA to purchase equipment for a potential CC plant at Kingston. These long-lead procurement actions are needed to maintain TVA's current preferred retirement and replacement schedule for the first unit at Cumberland, and to lock in pricing on a potential CC plant at Kingston. At this time, however, TVA has not made final decisions with respect to retirement or replacement generation at either the Cumberland or Kingston sites. This action to enter into a contract with General Electric does not irreversibly and irretrievably commit TVA to any particular course of action prior to a final decision on retirement and replacement of generation assets at the Cumberland site. As instructed in your November 2021 delegation, I will inform the Board prior to making that final decision.

(Email, Docket No. 28-5.) Plaintiffs assert that, as shown by this email, TVA's CEO "directly considered" the GE Contract, and the contract "might have influenced" his decision to build the Cumberland Gas Plant. (Memorandum, Docket No. 28-1 at 11, 14 (quoting *Amfac Resorts, LLC v. U.S. Dep't of the Interior*, 143 F. Supp. 2d 7, 12 (D.D.C. 2001)).)

In response, TVA argues that the GE Contract, just like the Precedent Agreement, is not relevant to the scope of this litigation, which is whether TVA took the requisite "hard look" at the environmental consequences of its actions. (Response, Docket No. 29 at 13.) TVA again asserts that Plaintiffs have failed to show that TVA "relied heavily" on the GE Contract because the documents from the record to which Plaintiffs refer do not evidence the requisite reliance. (*Id.*) Finally, TVA argues that a review of a predetermination claim, such as the one Plaintiffs make in

this lawsuit, is "limited to the four corners of the EIS" so review of the GE Contract is unnecessary. (*Id.* at 16.) In particular, TVA argues that the above-quoted email sent by TVA's CEO to TVA's Board shows that the GE Contract was entered into as a "*business decision*" and "sheds no light on [the CEO's] separate considerate of the *potential environmental impacts* of the project." (*Id.* at 14.) TVA asserts that the CEO's awareness of the GE Contract is not "clear evidence" that he "actually considered" the contract when making the decision. (*Id.*)

Having considered the parties' arguments, the Court agrees with Plaintiffs that the GE Contract (Docket No. 28-4) should be included in the record. The Court finds that Plaintiffs have identified "reasonable, non-speculative grounds" for their belief that the GE Contract was not included in the record by attaching the GE Contract to their motion and by proving that the GE Contract was before the actual decisionmakers. *Protect Our Aquifer*, 2022 WL 341014 at *2 (citing *Sara Lee Corp.*, 252 F.R.D. at 34).

There is no question that TVA entered into the GE Contract on December 22, 2022 and that it relates to TVA's development of the Cumberland Gas Plant. As TVA's CEO said in his email, the GE Contract was entered into, in part, "to maintain TVA's current preferred retirement schedule for the first unit at Cumberland. and to lock in pricing on a potential CC [Combined Cycle] plant." (Email, Docket No. 28-5.) As set forth in the final Record of Decision, TVA decided to "construct a new natural gas-fueled 1,450-MW CC [Combined Cycle] plant at the CUF [Cumberland Fossil Plant] reservation." (AR 003465.) TVA's CEO was also careful to note that the GE Contract did not "irreversibly and irretrievably commit TVA to any particular course of action prior to a final decision on retirement and replacement of generation assets at the Cumberland site." (Email, Docket No. 28-5.) The Court agrees with Plaintiffs that this statement shows that the GE Contract

14

was before TVA because it was either "created by [TVA] itself or otherwise located in its files." *Cnty. of San Miguel*, 587 F. Supp. 2d at 76.

Further, whether the GE Contract reflects a "business decision" or shows "potential environment impacts" is irrelevant for the purposes of determining whether the document should be included in the record. As set forth above, TVA "may not exclude information from the record simply because it did not 'rely' on the excluded information in its final decision." *Banner Health*, 126 F. Supp. 3d at 58–59 (citation omitted). What matters is whether an agency considered a document, not whether a document is relevant to the underlying merits of the litigation or whether an agency relied upon the document. *See Save the Manatee Club v. U.S. Env't Prot. Agency*, No. 6:22-cv-868-CEM-LHP, 2023 WL 4195043, at *8 (M.D. Fla. May 24, 2023) (citing *Sierra Club v. U.S. Army Corps of Eng'rs*, No. 2:20-cv-00396-LEW, 2022 WL 2953075, at *1 (D. Me. July 26, 2022); *Catalyst Pharms., Inc. v. Azar*, No. 19-CV-22425, 2020 WL 4573068, at *5 (S.D. Fla. May 1, 2020); *Ctr. for Biological Diversity v. U.S. Bureau of Land Mgmt.*, No. C-06-4884-SI, 2007 WL 3049869, at *4 (N.D. Cal. Oct. 18, 2007); *Fund for Animals v. Williams*, 391 F. Supp. 2d 191, 197 (D.D.C. 2005); *Ad Hoc Metals Coal. v. Whitman*, 227 F. Supp. 2d 134, 139 (D.D.C. 2002); *Sierra Club v. U.S. Army Corps of Eng'rs*, No. 8:20-cv-287-CEH-JSS, 2021 WL 2580198, at *3 (M.D. Fla. Feb. 24, 2021)). Here, the GE Contract was "compiled" by TVA and was "before" TVA "at the time the decision was made" and should, therefore, be included in the record. *Sierra Club*, 120 F.3d at 638.

For these reasons, the Court finds that the GE Contract (Docket No. 28-4) is properly included in the record.

### 3. Studies and Plans in the Final EIS

Plaintiffs next argue that TVA "deliberately or negligently excluded from the administrative record numerous critical materials the agency cited and considered in its Final EIS." (Memorandum, Docket No. 28-1 at 15.) Plaintiffs point to seven references in the Final EIS:

|   | Document | AR Location | Reference |
|---|---|---|---|
| 1 | FY22 Budget Power Supply Plan | Final EIS (Appendix B, TVA Alternatives Evaluation), AR 002419 | "TVA staff utilized the FY22 Budget Power Supply Plan as the basis for the CUF [Cumberland Fossil Plant] Retirement EIS Alternatives analysis. For each alternative, a 20-year study was performed using expansion and production cost models." |
| 2 | 20-Year Study | | |
| 3 | TVA's Financial and System Analysis | Final EIS (Appendix B, TVA Alternatives Evaluation), AR 002425 | "TVA's financial and system analysis, using the least-cost planning framework along with consideration of the environmental impacts of the three alternatives, indicates that Alternative A, retirement of CUF and replacement of the first unit with a CC [Combined Cycle] Plant at the CUF Reservation, is the Preferred Alternative." |
| 4 | Interconnection and Transmission Evaluations | Final EIS (Appendix B, TVA Alternatives Evaluation), AR 002415 | "Sites will require interconnection and transmission work (evaluations conducted during the EIS indicated an expected 5duration 9 to 11 y6ears)." |
| 5 | Solar Plus Storage Evaluation and Reliability Analysis | Final EIS, AR 001870 | "T7VA performed a reliability analysis to determine an appropriate combination of solar and storage resources to maintain year-round system reliability for Alternative C. TVA began the solar plus storage evaluation by determining the appropriate level of solar resources needed to replace the energy needs resulting from the retirement of the CUF unit." |
| 6 | Current TVA Load Forecasts | Final EIS, AR 001875–76 | "Upon incorporating these trends, current TVA load forecasts point to slightly increasing peak loads over the next 20 years." |

| 7 | Analysis for the Entire TVA-Wide Power System | Final EIS, AR 002115 | "An analysis for the entire TVA-wide power system was performed using industry standard capacity planning and production cost models, ABB's System Optimizer and Energy Exemplar's Aurora. . . . The differences between each alternative are specific to the decision to retire or not retire Cumberland Fossil Plant and the associated replacement generation outlined in each alternative." |
|---|---|---|---|

(*Id.* at 15–16.)

Plaintiffs argue that these documents should be added to the record because TVA staff created them. (*Id.* at 16.) They also argue that the documents belong in the record because they are cited in the Final EIS, which demonstrates that TVA staff directly considered the documents in drafting the Final EIS. (*Id.*) Accordingly, Plaintiffs argue that TVA's CEO indirectly considered the documents because TVA staff directly considered them. (*Id.* (citing *Fort Sill Apache Tribe v. Nat'l Indian Gaming Comm'n,* 345 F. Supp. 3d 1, 3–6 (D.D.C. 2018); *WildEarth Guardians v. U.S. Forest Serv.*, 713 F. Supp. 2d 1243, 1260, 1264 (D. Colo. 2010); *Amfac Resorts, LLC*, 143 F. Supp. 2d at 12).) Plaintiffs argue that TVA may not exclude unpublished, internal materials or underlying data, and that these documents are not shielded by the deliberative process privilege.

TVA responds by asserting that TVA's CEO did not "actually consider[]" these documents, so they need not be included in the record. (Response, Docket No. 29 at 18.) TVA argues that the standard for inclusion is not whether the documents are relevant or were referenced, but whether the decisionmaker considered them either directly or indirectly. (*Id.* at 18–19.) It states that much

of the information contained within the documents that Plaintiffs seek to add to the record is already contained and explained within the existing record. (*Id.* at 20.)[3]

To support this contention, TVA cites to a declaration from Brian Child, TVA's Vice President of Enterprise Planning, which is a department or section of TVA that establishes and oversees TVA's strategic financial and resource planning. (B. Child Declaration, Docket No. 29-5, ¶ 6.) In his declaration, Mr. Child states that six of the seven documents that Plaintiffs seek to add to the record are "redundant" because they all seek "information relating to Enterprise Planning's modeling and analyses of the TVA power system to evaluate the three alternatives studied in the [Final] EIS." (*Id.*) He asserts that this modeling (including modeling methodologies, input parameters, and results) is "thoroughly explained" in the Final EIS. (*Id.* at ¶ 7.)

TVA argues that the statements in Mr. Child's declaration show that Plaintiffs are not able to establish that "the record as presented cannot allow substantial and meaningful judicial review." (Response, Docket No. 29 at 21 (quoting *Save the Colorado v. U.S. Dep't of the Interior*, 517 F. Supp. 3d 890, 986 (D. Ariz. 2021)).) They argue that Mr. Child's statements show that the studies and plans in the EIS are not "necessary" to determine whether TVA took a "hard look" at the environmental impact of the proposed action. (*Id.* (citing *Coal. for Responsible Reg'l Dev. v. Coleman*, 555 F.2d 398, 400 (4th Cir. 1977)).)

Having considered the parties' arguments, the Court finds that oral argument regarding whether these studies and plans should be included in the record would be beneficial for the Court. The Court is particularly interested in understanding the scope and context of the documents at issue; the parties' positions on whether and how the alleged redundancy of the documents at issue

---

[3] TVA did not respond to Plaintiffs' assertion that the documents at issue cannot be shielded by the "deliberative process privilege." Accordingly, the Court considers TVA to have waived any argument that the documents are, indeed, shielded by such a privilege.

matters to the Court's analysis; and the parties' positions on whether and how the "consideration through citation" doctrine applies, *see Ctr. for Native Ecosystems v. Salazar*, 711 F. Supp. 2d 1267, 1275–76 (D. Col. 2010). Accordingly, the Court reserves a ruling on whether the seven documents listed above should be added to the record pending a hearing as detailed below.

## IV. CONCLUSION

For these reasons, Plaintiffs' motion to complete the administrative record (Docket No. 28) is **PARTIALLY GRANTED** with reservation of remaining issues. The Court reserves a ruling on whether TVA "deliberately or negligently excluded from the administrative record numerous critical materials the agency cited and considered in its Final EIS" pending a hearing and oral argument. (Memorandum, Docket No. 28-1 at 15.)

For these same reasons, the parties' joint motion for oral argument (Docket No. 32) is **GRANTED**. A hearing on Plaintiffs' motion to complete the administrate record (Docket No. 28), as detailed above, is scheduled for **Thursday, May 16, 2024 at 2:00 p.m. (CDT)** in Courtroom 3D, Fred D. Thompson U.S. Courthouse, 719 Church Street, Nashville, Tennessee.

Following entry of this Order, the Clerk is **DIRECTED** to reinstate the motion to complete the administrative record (Docket No. 28) as active pending further order fully resolving the motion following the hearing.

It is SO ORDERED.

_____
BARBARA D. HOLMES
United States Magistrate Judge

19

Case 3:23-cv-00604   Document 37   Filed 04/29/24   Page 19 of 19 PageID #: 865