UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| APPALACHIAN VOICES, CENTER FOR BIOLOGICAL DIVERSITY, and SIERRA CLUB, <br><br> Plaintiffs, <br><br> v. <br><br> TENNESSEE VALLEY AUTHORITY, <br><br> Defendant. | Case No. 3:23-cv-00604 <br> District Judge Eli J. Richardson <br> Magistrate Judge Barbara D. Holmes |

## PLAINTIFFS' NOTICE PURSUANT TO MARCH 7, 2025 ORDER

O.W. "Trey" Bussey, TN BPR No. 037814
Amanda Garcia, TN BPR No. 033773
SOUTHERN ENVIRONMENTAL LAW CENTER
1033 Demonbreun Street, Suite 205
Nashville, TN 37203
Telephone: (615) 921-9470
Facsimile: (615) 921-8011
tbussey@selc.org
agarcia@selc.org

Gregory Buppert, TN BPR No. 024340
SOUTHERN ENVIRONMENTAL LAW CENTER
120 Garrett Street, Suite 400
Charlottesville, VA 22902
Telephone: (434) 977-4090
Facsimile: (434) 993-5549
gbuppert@selc.org

Pursuant to the Court's March 7, 2025 Order, Doc. No. 56, Plaintiffs write to "provide context for the Magistrate judge's rulings" and address the "categories of information set forth in Plaintiffs' motion that [Plaintiffs] claim should be part of the AR." *Id.* at 1.

In January 2023, Defendant Tennessee Valley Authority ("TVA") published a record of decision ("Record of Decision") to build a methane gas-fired power plant ("Cumberland Gas Plant") at its Cumberland site in Middle Tennessee. AR 003462–66. The Record of Decision concluded TVA's National Environmental Policy Act ("NEPA") review of the plant's costs, alternatives, and environmental impacts. *Id.* Plaintiffs allege that TVA violated NEPA and the Administrative Procedure Act ("APA") by improperly committing to the Cumberland Gas Plant before completing its NEPA review. Doc. No. 16 at 39. Plaintiffs also allege that TVA's arbitrary consideration of the Cumberland Gas Plant's costs, alternatives, and environmental effects violates NEPA and the APA. *Id.* at 1. To review those claims, the Court is entitled to the same information TVA had before it when the agency concluded its NEPA process and decided to build the Cumberland Gas Plant. *See Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977).

Through public records requests, Plaintiffs obtained redacted copies of two contracts TVA executed for the Cumberland Gas Plant's pipeline and equipment before concluding its NEPA review. *See* Doc. No. 28-1 at 5–8. And in the final NEPA document, TVA expressly justified its decision based on technical studies TVA conducted. AR 002419–25; *see* Doc. No. 50 at 16. TVA did not include the contracts or the studies in the administrative record filed with the Court. *See* Doc. No. 28. Plaintiffs moved to complete the administrative record with those contracts and studies so the Court can determine whether TVA's NEPA review was timely and reasonable, as required by NEPA and the APA. *Id.* After reviewing evidence in the record and exhibits to

1

Plaintiffs' motion—and after oral argument and multiple rounds of briefing—the Magistrate Judge correctly held that the unredacted contracts and five categories of technical materials belong in the administrative record because TVA directly or indirectly considered them. Doc. No. 50 at 28–29. For the reasons outlined here and in Plaintiffs' Response in Opposition, Doc. No. 52, the Court should deny TVA's motion, Doc. No. 51, to review and reverse the Magistrate Judge's April 19 and July 15, 2024 orders, Docs. No. 37 & 50.

## Standard of Review

Upon timely objection, a district judge must "modify or set aside any part of [a magistrate judge's non-dispositive] order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a); *see* 28 U.S.C. § 636(b)(1)(A). Factual determinations are reviewed for clear error, legal conclusions de novo, and mixed questions of law and fact on a "sliding scale" in between those two standards, such as for abuse of discretion. *Bisig v. Time Warner Cable, Inc.*, 940 F.3d 205, 221 (6th Cir. 2019) (quotation omitted).

Under the APA, courts review agency action based on "the whole record," 5 U.S.C. § 706, meaning "the full administrative record" that was before the decisionmakers at the time of the decision. *Citizens to Preserve Overton Park*, 401 U.S. at 420. That includes materials the agency considered "directly or indirectly," *In re U.S. Dep't of Def. & U.S. Env't Prot. Agency Final Rule: Clean Water Rule: Definition of "Waters of the United States," 80 Fed. Reg. 37,054 (June 29, 2015)*, No. 15-3751, 2016 WL 5845712, at *1 (6th Cir. Oct. 4, 2016), so the agency must produce "whatever documentation it has from its decision-making process," *Sherwood v. TVA*, 842 F.3d 400, 407 (6th Cir. 2016). Courts presume an agency has properly designated the administrative record, but a moving party may overcome that presumption with "clear evidence" that the agency deliberately or negligently excluded materials decisionmakers considered. *Sherwood v. TVA*, 590 F. App'x 451, 459–60 (6th Cir. 2014).

## I. Records of TVA's Premature Commitment to the Cumberland Gas Plant

Plaintiffs have alleged that TVA unlawfully committed to the Cumberland Gas Plant before completing the NEPA review in which TVA was required to consider alternatives. Doc. No. 16 at 37–39. Through public records requests, Plaintiffs obtained redacted contracts TVA executed for equipment and a new pipeline for the Cumberland Gas Plant before concluding the NEPA process. Doc. No. 28-1 at 5–8. Plaintiffs moved to include those contracts and any expenses incurred in fulfillment of TVA's obligations under the contracts. Doc. No. 28 at 2.

TVA objects that the contracts are irrelevant to analysis of the environmental effects in the Final Environmental Impact Statement ("EIS"). Doc. No. 51-1 at 9. But NEPA requires agencies to study the effects of a proposed project *and* a "reasonable range of alternatives." 42 U.S.C. § 4332(2)(C)(i)–(iii). As a federal agency, TVA cannot commit to one alternative before completing NEPA review, 18 C.F.R. § 1318.405(d), and courts routinely review agency contracts to determine if the agency's premature commitment to one alternative crossed the line, *see, e.g.*, *Burkholder v. Peters*, 58 F. App'x 94, 96–97 (6th Cir. 2003); *Forest Guardians v. U.S. Fish & Wildlife Serv.*, 611 F.3d 692, 718 (10th Cir. 2010). The contracts for the Cumberland Gas Plant's pipeline and equipment relate to TVA's consideration of alternatives and the agency's unlawfully premature commitment to the Cumberland Gas Plant.

### A. General Electric Contract

In the General Electric ("GE") Contract, TVA agreed to purchase methane gas-fired "power island equipment," including "advanced-class gas turbine-generators (GTGs), two steam turbine generators (STGs), two heat recovery steam generators (HRSGs), and all required auxiliary equipment[.]" Doc. No. 28-4 at 5. The GE Contract is dated December 22, 2022. *Id.* at 64. TVA did not publish the final Record of Decision, signed by the Chief Executive Officer ("CEO"), until January 20, 2023. AR 003462–66.

In support of their motion, Plaintiffs included a redacted version of the GE Contract, as well as an email from TVA's CEO to TVA's Board of Directors describing that contract. Doc. No. 28-5 at 1. Reviewing the GE Contract and the CEO's email, the Magistrate Judge found "reasonable, non-speculative grounds" to conclude the GE Contract had been "before the actual decisionmakers" at the time of the decision. Doc. No. 37 at 14.

Since the parties' last round of briefing in September 2024, Docs. No. 54 & 55, TVA has published additional evidence confirming the GE Contract was before the agency during the NEPA process. In a filing before the Tennessee Department of Environment & Conservation on October 10, 2024, TVA Vice President of Major Projects, Roger Waldrep, declared:

> 4. On December 22, 2022, TVA and GE executed a contract (TVA Contract No. 17545) for two [power island equipment ("PIE")] trains for Cumberland and a third PIE train intended for Kingston.
>
> 5. On December 22, 2022, upon executing the contract, TVA paid GE a non-refundable payment for the two Cumberland PIE trains.
>
> 6. Beginning in January 2023, TVA made additional non-refundable monthly payments to GE.

Ex. 1, Waldrep Decl. ¶¶ 4–6.[1]

In the version of the GE Contract Plaintiffs obtained, payment information is redacted. The Table of Contents refers to a "Pricing Schedule," which appears to be entirely redacted. *Compare* Doc. No. 28-4 at Table of Contents (list of Attachments), *with id.* at 65. The Waldrep declaration supports the Magistrate Judge's finding that the *unredacted* GE Contract was before

---

[1] The declaration of Roger T. Waldrep is attached to this Notice as Exhibit 1 and is available on the Tennessee Department of Environment & Conservation's website at https://dataviewers.tdec.tn.gov/dataviewers/f?p=19031:34051::::34051:P34051_PERMIT_ID:98565. The Court may take judicial notice of information on a government website. *See Oak Ridge Env't Peace All. v. Perry*, 412 F. Supp. 3d 786, 810 n.6 (E.D. Tenn. 2019).

4

TVA decisionmakers during the decision-making process. Doc. No. 50 at 26–27.[2]

### B. Precedent Agreement

The Precedent Agreement is a "Contract for Firm Transportation Service" between TVA and Tennessee Gas Pipeline Company, L.L.C., for all the methane gas the Cumberland Gas Plant would need, transported via a new 30-inch-diameter, 32-mile-long pipeline. Doc. No. 28-3 at 1. The parties executed the agreement on August 11, 2021, Doc. 28-3 at 21, more than a year before TVA issued the Record of Decision, AR 003465.

To find clear evidence that TVA's decisionmakers directly or indirectly considered the Precedent Agreement, Doc. No. 37 at 11–12, the Magistrate Judge reviewed a redacted version of the Precedent Agreement, Doc. No. 28-3, as well as discussions of the Precedent Agreement in the Draft EIS, Doc. No. 37 at 9–10 (citing AR 03277, 003300), public comments on the Draft EIS, *id.* at 8 (citing AR 035473 – 529), the Final EIS, *id.* at 9 (citing AR 001837), and the Memorandum Requesting Final Approval signed by TVA's CEO, *id.* at 10 (citing AR 003443). The Magistrate Judge later clarified that the unredacted Precedent Agreement belonged in the administrative record because that is what TVA's decisionmakers considered. Doc. No. 50 at 23. The Magistrate Judge's finding is neither clear error nor contrary to law.

### II. Records on which TVA Expressly Relied in the Final EIS

TVA has characterized Plaintiffs' motion as a fishing expedition for "every scrap of paper" tucked away in any employee's desk. Doc. No. 29 at 18 (quotation omitted). That's not

---

[2] The July 15 Order denied Plaintiffs' request for records of expenses TVA incurred pursuant to the GE Contract, finding Plaintiffs had not presented clear evidence that such records were before TVA at the time of its decision. Doc. No. 50 at 28. Plaintiffs have not moved to review that order, but TVA has, Doc. No. 51, and the Court authorized briefing on the "categories of information set forth in Plaintiffs' motion that they claim should be part of the AR," Doc. No. 56 at 1. The Waldrep declaration, Ex. 1, is additional evidence that records of expenses related to the GE Contract were before TVA, and the Court has discretion to reconsider and modify interlocutory orders before final judgment, *In re Saffady*, 524 F.3d 799, 803 (6th Cir. 2008).

5

what Plaintiffs requested and that's not what the Magistrate Judge ordered. Instead, Plaintiffs asked for material on which TVA's Final EIS expressly relied. Doc No. 28 at 1–3. Materials on which an agency relies to reach a decision belong in the administrative record. *See* Doc. No. 52 at 6–10, 17. There is no exception for technical information. *See id.* at 17. Accordingly, the Magistrate Judge correctly and appropriately ordered TVA to produce the technical studies the agency expressly relied on to justify a decision to build the Cumberland Gas Plant, for which the ten million people in TVA's captive service territory would pay through electricity bills and pollution impacts for decades.

> A. **"TVA's Financial and System Analysis," "Analysis for the Entire TVA-Wide Power System," the "20-Year Study," and the "FY22 Power Budget Supply Plan"**

According to TVA, the "Financial and System Analysis," the "Analysis for the Entire TVA-Wide Power System," the "20-Year Study," and the "FY22 Power Budget Supply Plan" are "essentially the same information," namely "Enterprise Planning's modeling and analyses of the TVA power system to evaluate the three alternatives studied in the Cumberland EIS." Doc. No. 29-5 at 3–4. For each alternative, TVA simulated how its whole power system would perform over a period of twenty years, analyzing how different plants would operate, how much pollution they would emit, and how much each alternative would cost TVA and its ratepayers. *Id.* at 18–19; Doc. No. 48 at 6–7.

On its face, the Final EIS relied on each of these studies. *See* Doc. No. 52 at 16–23. TVA's Vice President of Enterprise Planning confirmed that TVA performed this original analysis and relied on it during the NEPA decision-making process. Doc. No. 29-5 at 3–4. Because TVA relied on these studies to support its decision, the finding that TVA directly or indirectly considered them is neither clear error nor contrary to law.

6

### B. "Solar Plus Storage Evaluation and Reliability Analysis"

In the Final EIS, TVA included a subsection entitled "Solar Plus Storage Evaluation and Reliability Analysis":

> TVA performed a reliability analysis to determine an appropriate combination of solar and storage resources to maintain year-round system reliability for Alternative C. TVA began the solar plus storage evaluation by determining the appropriate level of solar resources needed to replace the energy needs resulting from the retirement of the first [Cumberland coal plant] unit.

AR 001870. TVA used this analysis to determine how much solar and battery storage it would analyze as Alternative C, one of the alternatives TVA considered during the decision-making process. AR 001870–71. Plaintiffs have challenged that determination as arbitrary and excessive, driving up the costs of Alternative C. Doc. No. 16 at 45–51. The Magistrate Judge reasonably held that TVA considered this data because "TVA specifically used the data Plaintiffs seek in order to determine that the Cumberland Gas Plant was the best alternative." Doc. No. 50 at 20. That holding is neither clear error nor contrary to law.

### C. Interconnection and Transmission Evaluations

Plaintiffs requested interconnection and transmission evaluations TVA conducted during the decision-making process. Doc. No. 28 at 2. In the Final EIS, TVA wrote, "Sites will require interconnection and transmission work (evaluations conducted during the EIS indicated an expected duration 9 to 11 years)." AR 002415. TVA used this critical conclusion to find that the solar-and-storage alternative would "not meet TVA's Purpose and Need." AR 001875. In its supplemental response in opposition, TVA stated there is no documentation of the "evaluation." Doc. No. 48 at 5–6. Accordingly, Magistrate Judge Holmes declined to "order TVA to supplement the administrative record with a document that does not exist." Doc. No. 50 at 18.

### Conclusion

For the foregoing reasons, Defendant TVA's motion should be denied.

7

Respectfully submitted,

*/s O.W. "Trey" Bussey*
O.W. "Trey" Bussey, TN BPR No. 037814
Amanda Garcia, TN BPR No. 033773
SOUTHERN ENVIRONMENTAL LAW CENTER
1033 Demonbreun Street, Suite 205
Nashville, TN 37203
Telephone: (615) 921-9470
Facsimile: (615) 921-8011
tbussey@selc.org
agarcia@selc.org

Gregory Buppert, TN BPR No. 024340[3]
SOUTHERN ENVIRONMENTAL LAW CENTER
120 Garrett Street, Suite 400
Charlottesville, VA 22902
Telephone: (434) 977-4090
Facsimile: (434) 993-5549
gbuppert@selc.org

*Counsel for Appalachian Voices, Center for Biological Diversity, and Sierra Club*

---

[3] As required by Local Rule 83.01(d)(3), Mr. Buppert is a member of the Tennessee bar and has provided his Tennessee Board of Professional Responsibility number.

## CERTIFICATE OF SERVICE

I hereby certify that on March 21, 2025, I served a copy of the foregoing document on the following parties via the Court's electronic case filing system:

David Ayliffe, Director of Litigation
Frances Regina Koho, Attorney
Lane E. McCarty, Attorney
Sydney D. Nenni, Attorney
Office of the General Counsel
Tennessee Valley Authority
400 West Summit Hill Drive
Knoxville, TN 37902

/s O.W. "Trey" Bussey
O.W. "Trey" Bussey
SOUTHERN ENVIRONMENTAL LAW CENTER

*Counsel for Appalachian Voices, Center for Biological Diversity, and Sierra Club*